United States District Court
For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7        FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   STANLEY BLACK & DECKER, INC., and   ) Case Nos. 12-4516 SC
    THE BLACK & DECKER CORPORATION,     )
10                                       )
                                         )
11             Plaintiffs,               ) ORDER GRANTING APPLICATION
                                         ) FOR CONTEMPT SANCTIONS
12        v.                             )
                                         )
13  D&L ELITE INVESTMENTS, LLC, d/b/a    )
    G BAY INTERNATIONAL; BILLY DENG;     )
14  WISHEN LUO; and JOHN DOES 1-10,      )
    inclusive,                           )
15                                       )
                                         )
16             Defendants.               )
                                         )
17  _____  )

18

19  **I.     INTRODUCTION**

20       The above-captioned plaintiffs ("Black & Decker") bring this

21  action for trademark infringement against Defendants D&L Elite

22  Investments ("D&L"), Billy Deng ("Deng"), and Wishen Luo ("Luo")

23  (collectively, "Defendants") in connection with Defendants' alleged

24  sale of counterfeit DeWalt batteries.  ECF No. 1 ("Compl.").  On

25  September 5, 2012, the Court entered a temporary restraining order

26  enjoining Defendants from selling or otherwise distributing the

27  alleged counterfeit batteries.  ECF No. 26 ("TRO").  Defendants

28  subsequently stipulated to a preliminary injunction with the same

**United States District Court**
For the Northern District of California

1  terms and conditions.  ECF No. 29.  Black & Decker has since

2  applied for contempt sanctions on the ground that Defendants

3  violated the TRO and preliminary injunction.  ECF No. 59 ("App.").

4  On May 8, 2013, the Court ordered Defendants to show cause why

5  contempt sanctions should not issue.  ECF No. 50.  Defendants have

6  filed a response to the Order to Show Cause, and Black & Decker has

7  filed a reply in support of its Application.  ECF Nos. 72

8  ("Response"), 73 ("Reply").  This matter is now appropriate for

9  determination without oral argument per Civil Local Rule 7-1(b).

10  For the reasons set forth below, Black & Decker's Application for

11  contempt sanctions is GRANTED.

12

13  **II.  BACKGROUND**

14      Plaintiff Black & Decker manufacturers and sells tools and

15  accessories, including DeWalt battery packs.  Compl. ¶ 17.  Black &

16  Decker owns the trademark registrations for the DeWalt mark, as

17  well as trade dress registrations for DeWalt's signature yellow and

18  black color scheme, both of which are used in connection with

19  DeWalt battery packs.  Id. ¶ 14.  According to certified documents

20  from the California Secretary of State, Defendant D&L is a

21  California corporation with a principal place of business at

22  Huntwood Avenue in Hayward, California.  ECF No. 59 ("Keats Decl.")

23  Ex. 81.  These records also indicate that Defendant Luo is a

24  general partner at D&L and Defendant Deng is its agent.  Id.  Black

25  & Decker asserts that D&L sells counterfeit DeWalt batteries under

26  various aliases, including G Bay International ("G Bay").

27      In or around 2012, Black & Decker's counsel hired private

28  investigators to collect evidence of Defendants' alleged trademark

**United States District Court**
For the Northern District of California

1    infringement.  Juan Rubio ("Rubio"), one of the private

2    investigators, submitted a declaration in support of Black &

3    Decker's TRO application.  ECF No. 8 ("Rubio Decl.").  Rubio states

4    that he visited a warehouse at D&L's Huntwood Avenue address on

5    July 12, 2012, and found a sign for G Bay.  Id. ¶ 9.  Rubio called

6    G Bay and reached a man named "Billy," who said that he could meet

7    Rubio at the Hayward warehouse later that day.[1]  Id.  When Rubio

8    met Billy at the warehouse, he observed a number of batteries

9    bearing the DeWalt trademark and trade dress and ultimately

10   purchased one of these batteries.  Id. ¶ 10.  In later

11   communications with the Black & Decker investigators, Billy

12   indicated that G Bay had approximately 200 DeWalt batteries on hand

13   and that the company could special-order additional batteries.  ECF

14   No. 13 ("Yerena Decl.") ¶ 12.

15       Bhanu Gorti ("Gorti"), Black & Decker's Vice President of

16   Engineering Global Electronics and Electrical Systems, declares

17   that the battery purchased by Rubio is a counterfeit.  ECF No. 11

18   ("Gorti Decl.").  Gorti explains that the counterfeit battery is

19   inferior to genuine DeWalt batteries in a number of respects and

20   that the counterfeit battery presents significant safety hazards,

21   including an explosion risk.  Id.  Black & Decker employees and

22   customers have purchased similar counterfeit batteries on the

23   websites eBay and Amazon.  See ECF No. 10 ("Foss Decl.").  Gorti

24   concludes that these counterfeit batteries were made by the same

25   manufacturer that made the counterfeit battery purchased by Rubio.

26       After reviewing this and other evidence submitted by Black &

27

28   _____
     [1] Black & Decker appears to suggest that "Billy" is actually Billy
     Deng, an agent of D&L and one of the individual defendants in this
     action.

**United States District Court**
For the Northern District of California

1  Decker, the Court entered a TRO on September 5, 2012.  Among other

2  things, the TRO enjoined Defendants from "marketing, advertising,

3  distributing, offering to sell, or selling any product, packaging

4  or any other item of any kind that is or ever was named or labeled

5  with the word 'DeWalt' or any colorable imitation thereof."  TRO at

6  3.  The Court denied Black & Decker's request for a seizure order,

7  which would have provided for the seizure of counterfeit batteries

8  and other evidence by federal marshals.  The parties later

9  stipulated to a preliminary injunction with the same basic terms as

10  the TRO, and the Court granted the stipulation on September 20,

11  2012.

12      On April 17, 2013, Black & Decker filed an ex parte

13  Application for a seizure order on the ground that Defendants had

14  continued to market and sell counterfeit batteries in violation of

15  the TRO and preliminary injunction.  Black & Decker also requested

16  an order to show cause why contempt sanctions should not issue, and

17  a temporary restraining order freezing Defendants' financial

18  accounts and assets.  Black & Decker specifically sought $43,758 in

19  sanctions, as well as the attorney fees it incurred in bringing the

20  Application.

21      In support of the Application, Black & Decker submitted, inter

22  alia, evidence produced by Paul Asbury ("Asbury"), the owner of

23  Discount Tool Mall.  ECF No. 60 ("Asbury Decl.") ¶ 1.  This

24  evidence shows that Luo offered to sell and did in fact sell Asbury

25  a number of DeWalt branded batteries throughout September, October,

26  November, and December 2012.  Id. Exs. 2-3.  The evidence also

27  shows that Asbury was invoiced $43,758 for these batteries.  A

28  declaration from one of Black & Decker's senior project engineers

1   states that the batteries sold to Asbury were counterfeit and were

2   made by the same manufacturer who made the counterfeit batteries

3   purchased in connection with Black & Decker's TRO.  ECF No. 62

4   ("Osborne Decl.").

5        In its Application, Black & Decker also complained about what

6   it characterized as Defendants' "less-than-forthcoming" discovery

7   responses.  App. at 4.  According to Black & Decker's attorneys,

8   Defendants agreed to allow Black & Decker to inspect Deng's

9   computer hard drive.  Keats Decl. ¶ 5.  Defendants repeatedly

10  delayed turning over the computer, and eventually Defendants

11  represented that they did not have any computers which were used in

12  connection with the alleged counterfeit batteries.  In one meet-

13  and-confer conference, D&L's attorney purportedly stated that Deng

14  arranged for his computer to be "recycled."  Id. ¶ 12.

15       On April 24, 2013, the Court granted Black & Decker's

16  Application.  The Court issued an order to show cause regarding

17  contempt sanctions, as well as a seizure order and a temporary

18  restraining order freezing Defendants' financial accounts.

19  Defendants were permitted to move for the modification or

20  dissolution of the asset restraining order upon two days' written

21  notice to the Court and opposing counsel.  Defendants have yet to

22  take any action to modify the asset restraining order, aside from a

23  stipulation to unfreeze a single safe deposit box.  ECF No. 54.

24       Pursuant to the Court's April 24 Order, U.S. Marshalls

25  conducted a seizure at one of Defendants' warehouses on May 3,

26  2013.  ECF No. 75 ("McArthur Decl.") ¶ 2.  Evidence collected as a

27  result of the seizure suggests that Defendants continued to sell

28  counterfeit DeWalt batteries to other customers after the entry of

**United States District Court**
For the Northern District of California

1   the TRO and preliminary injunction.  <u>See</u> MacArthur Decl. Exs. 1-12.

2

3   **III. LEGAL STANDARD**

4       Federal courts "have inherent power to enforce compliance with

5   their lawful orders through civil contempt." <u>Spallone v. United</u>

6   <u>States</u>, 493 U.S. 265, 276 (1990) (quotations omitted).  The party

7   moving for sanctions "has the burden of showing by clear and

8   convincing evidence that the contemnors violated a specific and

9   definite order of the court." <u>Stone v. City & Cnty. of San</u>

10  <u>Francisco</u>, 968 F.2d 850, 856 n.9 (9th Cir. 1992).  "The burden then

11  shifts to the contemnors to demonstrate why they were unable to

12  comply. . . .  They must show they took every reasonable step to

13  comply." <u>Id.</u> (internal citations omitted).

14

15  **IV.  DISCUSSION**

16      **A.   Monetary Sanctions**

17      The Court finds that civil contempt sanctions against

18  Defendants are appropriate.  The TRO and preliminary injunction

19  unequivocally prohibited Defendants from selling or marketing

20  counterfeit DeWalt batteries.  The declarations and other evidence

21  submitted by Black & Decker clearly show that Defendant violated

22  those orders by selling counterfeit batteries to Asbury.

23  Defendants do not deny that they sold DeWalt brand batteries to

24  Asbury or that those batteries were counterfeit.  In fact,

25  Defendants' response to the Order to Show Cause admits that

26  Defendants sold certain products to Asbury and that they ultimately

27  were forced to refund Asbury at least some of the money for his

28  purchase.  Response at 2.

**United States District Court**
For the Northern District of California

1    Defendants argue that sanctions are not warranted here because

2  they refunded $38,676 to Asbury between February 2013 and March

3  2013, and, as a result, there are no profits to disgorge.  Id.

4  This argument lacks merit.  First, regardless of whether Defendants

5  refunded Asbury's money, their decision to sell the batteries in

6  the first instance constituted a blatant violation of the Court's

7  order.  According to Defendants' response brief, the first sale to

8  Asbury took place on November 23, 2012, about two months after the

9  Court entered the preliminary injunction.  Id.  By this time,

10 Defendants were aware that such actions were prohibited.  Second,

11 Defendants did not voluntarily refund the money in an attempt to

12 comply with the Court's orders.  Defendants' own evidence shows

13 that Asbury filed a complaint with PayPal demanding a "chargeback,"

14 and that Defendants disputed the claim.  See ECF No. 72-1

15 ("Harrison Decl.") Ex. 1.  PayPal ultimately ruled against

16 Defendants and forced them to refund Asbury's money.  See id.

17 Third, the evidence indicates that, after the entry of the TRO,

18 Defendants earned more than $38,676 from the sale of counterfeit

19 batteries.  Defendants charged Asbury at least $43,758 for the

20 counterfeit batteries, and the evidence seized by the U.S.

21 Marshalls on May 4 suggests that Defendants sold or intended to

22 sell counterfeit batteries to a number of other customers in

23 violation of the Court's orders.

24    Next, Defendants argue that they lack the financial ability to

25 pay $43,758 in monetary sanctions and that they "are in dire

26 financial straits as their assets were frozen pursuant to this

27 Court's order of April 24, 2013."  Response at 3.  This argument

28 also lacks merit.  The Court is aware of no authority that would

7

**United States District Court**
For the Northern District of California

1  justify limiting the award of sanctions based on a contemnor's

2  ability to pay. In any event, if the only impediment is the

3  Court's restraining order, then that order can be modified.

4       Finally, Defendants argue that Black & Decker's Complaint and

5  Application include allegations of sales activity by entities and

6  individuals who are not associated with Defendants, including G.

7  Bay. Id. at 2. Defendants' contention is belied by the evidence,

8  including the declarations of Black & Decker's private

9  investigators and the evidence seized by the U.S. Marshalls on May

10  4. Thus far, the only evidence that Defendants have put forth on

11  this topic is a cryptic declaration from their attorney stating

12  that, at a mediation session, Defendants explained that they were

13  not associated with G Bay and the other entities named in Black &

14  Decker's Application. Harrison Decl. ¶ 4. In any event, the Court

15  need not reach the issue to find that Defendants violated the TRO

16  and preliminary injunction. The evidence submitted by Black &

17  Decker shows that Defendant Luo, not G Bay, sold the counterfeit

18  batteries to Asbury.

19       Defendants' blatant violations of the Court's orders justify

20  the award of monetary sanctions. The Court finds that $43,758 is

21  an equitable sanction since that amount is equivalent to the

22  revenue that Defendants would have realized from the sales to

23  Asbury.

24       **B.    Spoliation Sanctions**

25       In their reply brief, Black & Decker seeks spoliation

26  sanctions in connection with Defendants' destruction of Deng's

27  computer. Reply at 4-6. While Black & Decker discussed Deng's

28  computer in its Application, this is the first time Black & Decker

**United States District Court**
For the Northern District of California

1 has raised the issue of spoliation sanctions. Black & Decker urges

2 the Court to issue an order instructing the jury that it must draw

3 all inferences against Defendants due to their willful suppression

4 of evidence. The request is procedurally improper. Defendants

5 have not had an opportunity to respond to Black and Decker's

6 request because it was raised for the first time on reply.

7 Accordingly, Black & Decker's request for spoliation sanctions is

8 DENIED without prejudice. Black & Decker may file a separate

9 motion for spoliation sanctions in accordance with the local rules.

10      **C.    Attorney Fees**

11     While Black & Decker did not request spoliation sanctions in

12 its Application, it did request attorney fees. See App. at 24.

13 Defendants have yet to respond to this request and the Court finds

14 it proper. Attorney fees are recoverable to compensate a party for

15 the costs and expenses incurred in connection with a successful

16 motion for contempt. See Koninklijke Philips Elecs. N.V. v. KXD

17 Tech., Inc., 539 F.3d 1039, 1042-43 (9th Cir. 2008); Bad Ass Coffee

18 Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. P'ship, 95 F. Supp. 2d

19 1252, 1257 (D. Utah 2000). Accordingly, the Court GRANTS Black &

20 Decker's request for reasonable attorney fees incurred in

21 connection with the filing of its Application. Black & Decker

22 shall file declarations and other evidence documenting its attorney

23 fees within fourteen days of the signature date of this Order.

24 These documents should set forth the lodestar amount and describe

25 the hours expended, the work performed, and the attorneys'

26 qualifications and hourly rates. Defendants may file objections to

27 Black & Decker's requested attorney fees within twenty-eight days

28 of the signature date of this Order.

9

United States District Court
For the Northern District of California

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs Stanley Black & Decker, Inc. and the Black & Decker Corporation's Application for civil contempt sanctions and awards sanctions against Defendants D&L Elite Investments, Billy Deng, and Wishen Luo in the amount of $43,758.  Black & Decker's request for spoliation sanctions is DENIED without prejudice.  The Court GRANTS Black & Decker's request for attorney fees incurred in connection with this application, but defers setting the attorney fee amount pending the additional briefing requested in Section IV.C supra.

IT IS SO ORDERED.


Dated:   July 19, 2013

_____
UNITED STATES DISTRICT JUDGE