```
STANLEY BLACK & DECKER, INC., and  )  Case Nos. 12-4516 SC
THE BLACK & DECKER CORPORATION,    )
                                   )
         Plaintiffs,               )  ORDER GRANTING APPLICATION
                                   )  FOR CONTEMPT SANCTIONS
    v.                             )
                                   )
D&L ELITE INVESTMENTS, LLC, d/b/a  )
G BAY INTERNATIONAL; BILLY DENG;   )
WISHEN LUO; and JOHN DOES 1-10,    )
inclusive,                         )
                                   )
         Defendants.               )
                                   )
```

## I.    INTRODUCTION

The above-captioned plaintiffs ("Black & Decker") bring this action for trademark infringement against Defendants D&L Elite Investments ("D&L"), Billy Deng ("Deng"), and Wishen Luo ("Luo") (collectively, "Defendants") in connection with Defendants' alleged sale of counterfeit DeWalt batteries.  ECF No. 1 ("Compl.").  On September 5, 2012, the Court entered a temporary restraining order enjoining Defendants from selling or otherwise distributing the alleged counterfeit batteries.  ECF No. 26 ("TRO").  Defendants subsequently stipulated to a preliminary injunction with the same

terms and conditions. ECF No. 29. Black & Decker has since applied for contempt sanctions on the ground that Defendants violated the TRO and preliminary injunction. ECF No. 59 ("App."). On May 8, 2013, the Court ordered Defendants to show cause why contempt sanctions should not issue. ECF No. 50. Defendants have filed a response to the Order to Show Cause, and Black & Decker has filed a reply in support of its Application. ECF Nos. 72 ("Response"), 73 ("Reply"). This matter is now appropriate for determination without oral argument per Civil Local Rule 7-1(b). For the reasons set forth below, Black & Decker's Application for contempt sanctions is GRANTED.

## II.   BACKGROUND

Plaintiff Black & Decker manufacturers and sells tools and accessories, including DeWalt battery packs. Compl. ¶ 17. Black & Decker owns the trademark registrations for the DeWalt mark, as well as trade dress registrations for DeWalt's signature yellow and black color scheme, both of which are used in connection with DeWalt battery packs. Id. ¶ 14. According to certified documents from the California Secretary of State, Defendant D&L is a California corporation with a principal place of business at Huntwood Avenue in Hayward, California. ECF No. 59 ("Keats Decl.") Ex. 81. These records also indicate that Defendant Luo is a general partner at D&L and Defendant Deng is its agent. Id. Black & Decker asserts that D&L sells counterfeit DeWalt batteries under various aliases, including G Bay International ("G Bay").

In or around 2012, Black & Decker's counsel hired private investigators to collect evidence of Defendants' alleged trademark

2

infringement. Juan Rubio ("Rubio"), one of the private investigators, submitted a declaration in support of Black & Decker's TRO application. ECF No. 8 ("Rubio Decl."). Rubio states that he visited a warehouse at D&L's Huntwood Avenue address on July 12, 2012, and found a sign for G Bay. Id. ¶ 9. Rubio called G Bay and reached a man named "Billy," who said that he could meet Rubio at the Hayward warehouse later that day.[1] Id. When Rubio met Billy at the warehouse, he observed a number of batteries bearing the DeWalt trademark and trade dress and ultimately purchased one of these batteries. Id. ¶ 10. In later communications with the Black & Decker investigators, Billy indicated that G Bay had approximately 200 DeWalt batteries on hand and that the company could special-order additional batteries. ECF No. 13 ("Yerena Decl.") ¶ 12.

    Bhanu Gorti ("Gorti"), Black & Decker's Vice President of Engineering Global Electronics and Electrical Systems, declares that the battery purchased by Rubio is a counterfeit. ECF No. 11 ("Gorti Decl."). Gorti explains that the counterfeit battery is inferior to genuine DeWalt batteries in a number of respects and that the counterfeit battery presents significant safety hazards, including an explosion risk. Id. Black & Decker employees and customers have purchased similar counterfeit batteries on the websites eBay and Amazon. See ECF No. 10 ("Foss Decl."). Gorti concludes that these counterfeit batteries were made by the same manufacturer that made the counterfeit battery purchased by Rubio.

    After reviewing this and other evidence submitted by Black &

---

[1] Black & Decker appears to suggest that "Billy" is actually Billy Deng, an agent of D&L and one of the individual defendants in this action.

3

Decker, the Court entered a TRO on September 5, 2012. Among other things, the TRO enjoined Defendants from "marketing, advertising, distributing, offering to sell, or selling any product, packaging or any other item of any kind that is or ever was named or labeled with the word 'DeWalt' or any colorable imitation thereof." TRO at 3. The Court denied Black & Decker's request for a seizure order, which would have provided for the seizure of counterfeit batteries and other evidence by federal marshals. The parties later stipulated to a preliminary injunction with the same basic terms as the TRO, and the Court granted the stipulation on September 20, 2012.

On April 17, 2013, Black & Decker filed an ex parte Application for a seizure order on the ground that Defendants had continued to market and sell counterfeit batteries in violation of the TRO and preliminary injunction. Black & Decker also requested an order to show cause why contempt sanctions should not issue, and a temporary restraining order freezing Defendants' financial accounts and assets. Black & Decker specifically sought $43,758 in sanctions, as well as the attorney fees it incurred in bringing the Application.

In support of the Application, Black & Decker submitted, inter alia, evidence produced by Paul Asbury ("Asbury"), the owner of Discount Tool Mall. ECF No. 60 ("Asbury Decl.") ¶ 1. This evidence shows that Luo offered to sell and did in fact sell Asbury a number of DeWalt branded batteries throughout September, October, November, and December 2012. Id. Exs. 2-3. The evidence also shows that Asbury was invoiced $43,758 for these batteries. A declaration from one of Black & Decker's senior project engineers

4

states that the batteries sold to Asbury were counterfeit and were made by the same manufacturer who made the counterfeit batteries purchased in connection with Black & Decker's TRO.  ECF No. 62 ("Osborne Decl.").

In its Application, Black & Decker also complained about what it characterized as Defendants' "less-than-forthcoming" discovery responses.  App. at 4.  According to Black & Decker's attorneys, Defendants agreed to allow Black & Decker to inspect Deng's computer hard drive.  Keats Decl. ¶ 5.  Defendants repeatedly delayed turning over the computer, and eventually Defendants represented that they did not have any computers which were used in connection with the alleged counterfeit batteries.  In one meet-and-confer conference, D&L's attorney purportedly stated that Deng arranged for his computer to be "recycled."  Id. ¶ 12.

On April 24, 2013, the Court granted Black & Decker's Application.  The Court issued an order to show cause regarding contempt sanctions, as well as a seizure order and a temporary restraining order freezing Defendants' financial accounts.  Defendants were permitted to move for the modification or dissolution of the asset restraining order upon two days' written notice to the Court and opposing counsel.  Defendants have yet to take any action to modify the asset restraining order, aside from a stipulation to unfreeze a single safe deposit box.  ECF No. 54.

Pursuant to the Court's April 24 Order, U.S. Marshalls conducted a seizure at one of Defendants' warehouses on May 3, 2013.  ECF No. 75 ("McArthur Decl.") ¶ 2.  Evidence collected as a result of the seizure suggests that Defendants continued to sell counterfeit DeWalt batteries to other customers after the entry of

the TRO and preliminary injunction. See MacArthur Decl. Exs. 1-12.

### III. LEGAL STANDARD

Federal courts "have inherent power to enforce compliance with their lawful orders through civil contempt." Spallone v. United States, 493 U.S. 265, 276 (1990) (quotations omitted). The party moving for sanctions "has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Stone v. City & Cnty. of San Francisco, 968 F.2d 850, 856 n.9 (9th Cir. 1992). "The burden then shifts to the contemnors to demonstrate why they were unable to comply. . . . They must show they took every reasonable step to comply." Id. (internal citations omitted).

### IV. DISCUSSION

#### A. Monetary Sanctions

The Court finds that civil contempt sanctions against Defendants are appropriate. The TRO and preliminary injunction unequivocally prohibited Defendants from selling or marketing counterfeit DeWalt batteries. The declarations and other evidence submitted by Black & Decker clearly show that Defendant violated those orders by selling counterfeit batteries to Asbury. Defendants do not deny that they sold DeWalt brand batteries to Asbury or that those batteries were counterfeit. In fact, Defendants' response to the Order to Show Cause admits that Defendants sold certain products to Asbury and that they ultimately were forced to refund Asbury at least some of the money for his purchase. Response at 2.

6

Defendants argue that sanctions are not warranted here because they refunded $38,676 to Asbury between February 2013 and March 2013, and, as a result, there are no profits to disgorge. Id. This argument lacks merit. First, regardless of whether Defendants refunded Asbury's money, their decision to sell the batteries in the first instance constituted a blatant violation of the Court's order. According to Defendants' response brief, the first sale to Asbury took place on November 23, 2012, about two months after the Court entered the preliminary injunction. Id. By this time, Defendants were aware that such actions were prohibited. Second, Defendants did not voluntarily refund the money in an attempt to comply with the Court's orders. Defendants' own evidence shows that Asbury filed a complaint with PayPal demanding a "chargeback," and that Defendants disputed the claim. See ECF No. 72-1 ("Harrison Decl.") Ex. 1. PayPal ultimately ruled against Defendants and forced them to refund Asbury's money. See id. Third, the evidence indicates that, after the entry of the TRO, Defendants earned more than $38,676 from the sale of counterfeit batteries. Defendants charged Asbury at least $43,758 for the counterfeit batteries, and the evidence seized by the U.S. Marshalls on May 4 suggests that Defendants sold or intended to sell counterfeit batteries to a number of other customers in violation of the Court's orders.

Next, Defendants argue that they lack the financial ability to pay $43,758 in monetary sanctions and that they "are in dire financial straits as their assets were frozen pursuant to this Court's order of April 24, 2013." Response at 3. This argument also lacks merit. The Court is aware of no authority that would

justify limiting the award of sanctions based on a contemnor's ability to pay. In any event, if the only impediment is the Court's restraining order, then that order can be modified.

Finally, Defendants argue that Black & Decker's Complaint and Application include allegations of sales activity by entities and individuals who are not associated with Defendants, including G. Bay. Id. at 2. Defendants' contention is belied by the evidence, including the declarations of Black & Decker's private investigators and the evidence seized by the U.S. Marshalls on May 4. Thus far, the only evidence that Defendants have put forth on this topic is a cryptic declaration from their attorney stating that, at a mediation session, Defendants explained that they were not associated with G Bay and the other entities named in Black & Decker's Application. Harrison Decl. ¶ 4. In any event, the Court need not reach the issue to find that Defendants violated the TRO and preliminary injunction. The evidence submitted by Black & Decker shows that Defendant Luo, not G Bay, sold the counterfeit batteries to Asbury.

Defendants' blatant violations of the Court's orders justify the award of monetary sanctions. The Court finds that $43,758 is an equitable sanction since that amount is equivalent to the revenue that Defendants would have realized from the sales to Asbury.

**B.  Spoliation Sanctions**

In their reply brief, Black & Decker seeks spoliation sanctions in connection with Defendants' destruction of Deng's computer. Reply at 4-6. While Black & Decker discussed Deng's computer in its Application, this is the first time Black & Decker

8

has raised the issue of spoliation sanctions. Black & Decker urges the Court to issue an order instructing the jury that it must draw all inferences against Defendants due to their willful suppression of evidence. The request is procedurally improper. Defendants have not had an opportunity to respond to Black and Decker's request because it was raised for the first time on reply. Accordingly, Black & Decker's request for spoliation sanctions is DENIED without prejudice. Black & Decker may file a separate motion for spoliation sanctions in accordance with the local rules.

### C. Attorney Fees

While Black & Decker did not request spoliation sanctions in its Application, it did request attorney fees. See App. at 24. Defendants have yet to respond to this request and the Court finds it proper. Attorney fees are recoverable to compensate a party for the costs and expenses incurred in connection with a successful motion for contempt. See Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc., 539 F.3d 1039, 1042-43 (9th Cir. 2008); Bad Ass Coffee Co. of Hawaii, Inc. v. Bad Ass Coffee Ltd. P'ship, 95 F. Supp. 2d 1252, 1257 (D. Utah 2000). Accordingly, the Court GRANTS Black & Decker's request for reasonable attorney fees incurred in connection with the filing of its Application. Black & Decker shall file declarations and other evidence documenting its attorney fees within fourteen days of the signature date of this Order. These documents should set forth the lodestar amount and describe the hours expended, the work performed, and the attorneys' qualifications and hourly rates. Defendants may file objections to Black & Decker's requested attorney fees within twenty-eight days of the signature date of this Order.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs Stanley Black & Decker, Inc. and the Black & Decker Corporation's Application for civil contempt sanctions and awards sanctions against Defendants D&L Elite Investments, Billy Deng, and Wishen Luo in the amount of $43,758.  Black & Decker's request for spoliation sanctions is DENIED without prejudice.  The Court GRANTS Black & Decker's request for attorney fees incurred in connection with this application, but defers setting the attorney fee amount pending the additional briefing requested in Section IV.C supra.

IT IS SO ORDERED.

Dated: July 19, 2013

_____
UNITED STATES DISTRICT JUDGE

10