1

2

3

4

5

6

7

8                               UNITED STATES  DISTRICT COURT

9                                  Northern District of California

10                                    San Francisco Division

11    STANLEY BLACK & DECKER, INC., and              No. C 12-04516 SC (LB)
      THE BLACK & DECKER CORPORATION,
12                                                   **REPORT AND RECOMMENDATION**
                           Plaintiffs,               **TO STRIKE ANSWER AND ENTER**
13              v.                                    **DEFAULT JUDGMENT IN FAVOR**
                                                     **OF PLAINTIFFS**
14    D&L ELITE INVESTMENTS, LLC, a
      California limited liability company d/b/a G
15    BAY INTERNATIONAL; BILLY DENG, an              [Re: ECF Nos. 151, 153]
      individual; WEISHEN LUO, an individual;
16    and JOHN DOES 1-10, inclusive,

17                           Defendants.
      _____/
18

19                                      **INTRODUCTION**

20         In this Lanham Act and unfair competition action, Plaintiffs Stanley Black & Decker, Inc. and

21    The Black & Decker Corporation (together, "Black & Decker"), affiliated companies that design,

22    manufacture, and market professional tools, accuse Defendants D&L Elite Investments, LLC, doing

23    business as G Bay International ("D&L Elite" or "G Bay"), Billy Deng (G Bay's agent), and

24    Weishen Luo (a general partner in G Bay) of selling counterfeit Black & Decker products.  *See*

25    Complaint, ECF No. 1.[1]  In the pending motions, Black & Decker moves the court to strike

26    Defendants' jointly-filed Answer, enter their default, and grant default judgment against them and

27    _____

28         [1]  Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-
      generated page numbers at the top of the document.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   enter a permanent injunction in Black & Decker's favor.  *See* Motion to Strike, ECF No. 151;

2   Motion for Default Judgment, ECF No. 153.  The undersigned held a hearing on June 18, 2014 and

3   **RECOMMENDS** terminating sanctions for Defendants' discovery abuses and failure to participate

4   in the litigation, striking their Answer, and entering default judgment of $1,252,290, post-judgment

5   interest, and a permanent injunction in the form reflected at the end of this report and

6   recommendation.  This recommended judgment is in addition to the sanctions already awarded in

7   the case.

8                                          **STATEMENT**

9   **I.  FACTUAL ALLEGATIONS[2]**

10      Plaintiff Black & Decker manufactures and sells tools and accessories, including DeWalt battery

11   packs.  Complaint, ECF No. 1, ¶ 17.  Black & Decker owns the trademark registrations for the

12   DeWalt mark and the trade dress registrations for DeWalt's signature yellow and black color

13   scheme, both of which are used in connection with DeWalt battery packs.  *Id.* ¶ 14.  On August 29,

14   2012, Black & Decker sued D&L Elite / G Bay, Billy Deng, and Weishen Luo, alleging that they

15   sell counterfeit DeWalt battery packs under various aliases.  *See generally id.*  Black & Decker

16   asserts against them the following nine claims: (1) trademark counterfeiting, 15 U.S.C. §§ 1114-17;

17   (2) trademark infringement, 15 U.S.C. § 1114; (3) false designation of origin, 15 U.S.C. § 1125(a);

18   (4) trade dress infringement, 15 U.S.C. § 1125(a); (5) trademark dilution, 15 U.S.C. § 1125(c); (6)

19   unfair competition, Cal. Bus. & Prof. Code § 17200, *et seq.*; (7) state trademark dilution, Cal. Bus. &

20   Prof. Code § 14247; (8) common law unfair competition; and (9) constructive trust, Cal. Civ. Code

21   § 2224.  *Id.* ¶¶ 30-96.

22      Black & Decker alleges that it has "achieved hundreds of millions of dollars of sales of DeWalt

23   tools in California alone."  *Id.* ¶ 17.  Since 1992, it has "spent over half a billion dollars promoting

24   [its] DeWalt product line and the DeWalt Trademarks and Trade Dress."  *Id.* ¶ 18.  Black & Decker[3]

25

26      [2]  The factual allegations are taken from the complaint and Black & Decker's motion for

27   default judgment.

28      [3]  More specifically, Plaintiff The Black & Decker Corporation is the owner of the trademark
rights and Plaintiff Stanley Black & Decker, Inc. is the exclusive licensee.  *See* Complaint, ECF No.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   owns U.S. Trademark Registration Nos. 1,734,403 and 1,734,404 for use of the DeWalt mark in

2   connection with battery packs and battery chargers.  *Id.*, Ex. 1.  Black & Decker also owns two trade

3   dress registrations, Nos. 3,064,666 and 3,066,999 which cover the DeWalt yellow and black color

4   scheme used in connection with battery packs for electric power tools.  *Id.*, Ex. 1.  All four

5   registrations appear on the Principal Register of the U.S. Patent and Trademark Office.  *Id.*, Ex. 1.

6   All four registrations have become incontestable under 15 U.S.C. § 1065.  *See id.* ¶ 14, Ex. 2.

7   **II.  THE PROCEEDINGS BEFORE THE DISTRICT COURT**

8   Black & Decker filed a motion for a temporary restraining order ("TRO") the same day it filed

9   its complaint.  *See* Motion for TRO, ECF No. 5.

10   On September 5, 2012, the district court granted Black & Decker's motion and issued a TRO

11   prohibiting Defendants from infringing DeWalt's trademarks and trade dress and from altering,

12   destroying, or disposing of evidence of Defendants' past infringement.  *See* TRO, ECF No. 26 at 3-

13   5.  On September 20, 2012, the district court issued the parties' stipulated preliminary injunction

14   (which had the same terms as the TRO) and ordered the parties' stipulated expedited discovery.  *See*

15   Order Granting Stipulation, ECF No. 29; Stipulated Preliminary Injunction and Order, ECF No. 30.

16   Black & Decker's motion for a TRO included the following facts which also are relevant to its

17   motion for default judgment.

18   On or about May 9, 2012, a Black & Decker employee purchased what was advertised as an

19   authentic 18 Volt DeWalt battery pack on amazon.com.  *See* Foss Decl., ECF No. 10, ¶¶ 1-3.  The

20   return address identified the shipper as Weishen Luo, 2353 Old Post Way, San Jose, California.  *Id.*

21   Black & Decker determined that the battery pack was counterfeit.  *Id.*  On or about June 1, 2012,

22   Black & Decker purchased three more counterfeit batteries from the same seller on amazon.com.  *Id.*

23   ¶ 4.

24   In June 2012, Black & Decker was contacted by a customer who complained about

25   malfunctioning DeWalt batteries.  *Id.* ¶ 5.  The customer purchased these batteries on eBay from a

26   seller located whose email address was gbayyusa@yahoo.com with the mailing address of 30502

27

28

1, ¶¶ 6-7.

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Huntwood Avenue, Hayward, California.  *Id.* ¶ 5.  Black & Decker later determined that the

2   batteries were counterfeits.  *Id.* ¶ 8.

3       On July 12, 2012, private investigators hired by Black & Decker's counsel visited the G Bay

4   warehouse at 30502 Huntwood Avenue, Hayward, California.  *See* Rubio Decl., ECF No. 8, ¶¶ 8-9.

5   They spoke with Defendant Billy Deng and saw at least 25 yellow and black DeWalt 18V battery

6   packs.  *Id.* ¶ 10.  Mr. Deng told one of the investigators that the batteries were brand new, "that he

7   gets them all the time and could get us as many as we want, and that they are very good quality and

8   price." *Id.* ¶ 11.  They purchased one of the DeWalt battery packs from Mr. Deng for $30.00.  *Id.*

9   Black & Decker's engineering department reviewed the battery the investigator purchased and

10  determined that it was counterfeit.  *See* Gorti Decl., ECF No. 11, ¶¶ 3-18.

11      On July 17, 2012, investigator Ulysses Yerena called Mr. Deng on the telephone.  Yerena Decl.,

12  ECF No. 13, ¶ 12.  Mr. Deng told Mr. Yerena that G Bay International had approximately 200

13  DeWalt batteries on hand, and could special order DeWalt batteries in cases of 40.  *Id.*  Mr. Yerena

14  called Mr. Deng again on July 23, 2012.  *Id.* ¶ 13.  This time, Mr. Deng said that he still had the 200

15  DeWalt batteries but could get 300 or 400 batteries if that is how many Mr. Yerena wanted.  *Id.*  Mr.

16  Deng offered to sell 300 batteries for $27.00 each or 400 batteries for $26.00 each.  *Id.*

17      On August 13, 2012, Mr. Yerena called Mr. Deng again, who said that he still had the DeWalt

18  batteries and would get another big shipment soon.  *Id.* ¶ 14.  The next day, Mr. Yerena met Mr.

19  Deng at the G Bay warehouse.  *Id.* ¶ 15.  Mr. Yerena saw approximately 150 DeWalt batteries,

20  among other products.  *Id.* ¶¶ 15, 18.  Mr. Deng said that G Bay had about 500 DeWalt batteries, as

21  well as other DeWalt products.  *Id.* ¶ 17.  Mr. Yerena purchased two DeWalt batteries for $30.00

22  each.  *Id.* ¶ 21.

23      On or about August 15, 2012, Black & Decker received six more counterfeit batteries that had

24  been brought to Black & Decker service centers by customers.  Foss Decl., ECF No. 10, ¶ 7.  The

25  customers purchased these from a seller on eBay.  *Id.* ¶ 7.  Black & Decker identified the seller as

26  Defendant Weishen Luo.  *Id.*

27      Black & Decker served Mr. Deng and D&L Elite with the summons and complaint on September

28  10, 2012.  *See* ECF Nos. 28, 31.  Black & Decker made three attempts to personally serve Mr. Luo

1   in September 2012.  *See* Keats Decl. Supp. Motion for Default Judgment, ECF No. 154, ¶ 4, Ex. A.

2   On September 27, 2012, Defendants' attorney stated that his firm was "going to represent Weishen

3   Luo in this matter."  *See id.* ¶ 5, Ex. B.  On November 1, 2011, D&L Elite, Billy Mr. Deng, and Mr.

4   Luo jointly answered the complaint.  *See* Answer, ECF No. 33.  The parties thereafter entered into a

5   stipulated preliminary injunction enjoining and restraining Defendants from marketing, selling, or

6   transferring infringing products.  *See* Stipulated Preliminary Injunction and Order, ECF No. 30.

7       On April 24, 2013, after Black & Decker submitted evidence that Defendants violated the district

8   court's orders by continuing to sell counterfeit DeWalt batteries, the district court issued an order

9   restraining the Defendants' assets and enjoining them from transferring or disposing of money or

10  assets.  *See* 4/24/2013 Order (unsealed as of 5/08/13), ECF No. 50 at 4.  The court also authorized

11  the United States Marshal to seize the allegedly counterfeit batteries and ordered Defendants to

12  show cause why they should not be sanctioned.  *Id.*

13      On July 19, 2013, the district court sanctioned Defendants $43,759 for violating the TRO.

14  7/19/2013 Order, ECF No. 78 at 7-8 (noting and rejecting Defendants' argument that their refund to

15  Black & Decker of $38,676 in February and March 2013 meant that there were no profits to

16  disgorge; the refund was disputed, and PayPal required the refund).  As part of its holding, the

17  district court noted the following facts relevant to the motion for default judgment.  In and around

18  2012, Black & Decker's counsel hired private investigators to collect evidence of Defendants'

19  alleged trademark infringement.  *Id.* at 2.  One of the investigators, Juan Rubio, submitted a

20  declaration.  *See id.* at 3 (citing Rubio Decl., ECF No. 8).  He visited D&L's warehouse in Hayward

21  on July 12, 2012, and found a sign for G Bay, which Black & Decker alleges is an alias under which

22  D & L sold counterfeit DeWalt batteries.  *Id.* at 2-3 (citing complaint and Rubio Declaration).  Rubio

23  saw a number of batteries at the warehouse with the DeWalt trademark and trade dress and bought

24  one of the batteries.  *Id.* (citing Rubio Decl., ¶ 10).  In later communications with Black & Decker

25  investigators, Mr. Deng said that G Bay had approximately 200 batteries on hand and could special

26  order additional batteries.  *Id.* (citing Yerena Decl., ECF No. 13).  It was these facts that led to the

27  district court's entering the TRO on September 5, 2012.  *Id.* at 3-4.

28      The district court also chronicled that as part of Black & Decker's ex parte application for a

1    seizure order, it submitted evidence about ongoing sales to Paul Asbury, the owner of Discount Tool

2    Mall. *See id.* at 4 (citing Asbury Decl., ECF No. 60, ¶ 1). He said that Mr. Luo sold him DeWalt-

3    branded batteries in September, October, November, and December 2012 for a total of $43,758. *See*

4    *id.* According to Black & Decker's project engineers, these batteries were counterfeit. *See id.* at 4-5

5    (citing Osborne Decl., ECF No. 63).

6        The district court also observed that during the U.S. Marshals' May 3, 2013 seizure of items at

7    Defendants' warehouse, they collected evidence that "suggests that Defendants continued to sell

8    counterfeit DeWalt batteries to other customers after the entry of the TRO and preliminary

9    injunction. *See id.* at 5-6. The specific evidence was 494 counterfeit DeWalt batteries valued at

10   $40,000. *See* Keats Aff., ECF No. 53, ¶ 3 (regarding seized evidence). The Marshals also seized a

11   "[g]eneral ledger, tax records, and checkbook records for D&L Elite Investment LLC." *Id.* ¶ 17.

12       The district court also described how Black & Decker tried to inspect Mr. Deng's computer. *Id.*

13   at 5. Defendants' counsel had agreed to allow that inspection but later told Black & Decker that the

14   computer had been "recycled." *Id.* Defendants also "represented that they did not have any

15   computers which were used in connection with the alleged counterfeit batteries." *Id.*

16       In its reply brief in that sanctions proceeding, Black & Decker sought spoliation sanctions in the

17   form of an adverse inference instruction based on the destruction of Billy Deng's computer. *See id.*

18   at 8-9. The district denied the motion without prejudice to Black & Decker's raising the issue in a

19   separate spoliation motion. *Id.* at 9. The court also granted Black & Decker reasonable attorney's

20   fees and set up a procedure that required Black & Decker to file declarations with its lodestar

21   amounts within 14 days and Defendants to file any objections 28 days afterwards. *Id.* On August 2,

22   2013, Black & Decker filed declarations showing a lodestar amount of $87,921 and $2,030 in

23   investigator's costs. *See* Second Keats Aff., ECF No. 85, ¶ 23 (noting that other costs were not

24   included). Defendants did not oppose the amounts.

25       Other significant district court case events include the following. On August 13, 2013, the

26   district court released the Citibank accounts of Brian Tang and Jenny Fung from the asset freeze in

27   part on the ground that they were not defendants. *See* 8/13/2013 Order, ECF No. 92. On October 9,

28   2013, the district granted Black & Decker leave to amend and supplement the complaint and join

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1   new party defendants Brian Tang, Jenny Fung, G Bay International, Inc., Jane Luo, Wai C. "Chuck"

2   Tang, Thomas Tu, Shaofeng Liu, and Qiyun Zhu.  *See* 10/9/2013 Order, ECF No. 110.  On October

3   28, 2013, the district court denied Defendants' counsel's motion to withdraw from the case.  *See*

4   10/28/2013 Order, ECF No. 118.

## III.  DISCOVERY (OTHER THAN SPOLIATION MOTION) UP TO NOVEMBER 2013

6       As to discovery disputes before the undersigned, the parties filed a joint letter brief about

7   Defendants' failure to make themselves available for their depositions.  *See* Joint Letter Brief, ECF

8   No. 111 (describing Defendants' cancellation of their properly-noticed depositions and Black &

9   Decker's at-least weekly efforts to schedule depositions).  On October 18, 2013, the undersigned

10  ordered Defendants to make themselves available for depositions and warned them that a continued

11  failure to appear for their depositions might be grounds for monetary or other appropriate sanctions.

12  *See* 10/18/2013 Order, ECF No. 114 at 1.  Specifically, the undersigned ordered Defendants' counsel

13  to inform Defendants of the sanctions already requested by Plaintiffs and the possibility of other

14  sanctions including the following:  (a) the $5,460 in attorney's fees asked for in the joint letter brief;

15  (b) the possibility of other monetary sanctions for refusal to cooperate with discovery; and (c)

16  ultimately, a case-dispositive sanction that would result in a judgment in favor of Black & Decker.

17  *Id.* at 1-2.  The court also directed a meet-and-confer for a deposition schedule, ordered the filing of

18  an update by November 14, 2013, and denied without prejudice the motion for attorney's fees.

19  10/18/2013 Order, ECF No. 114 at 2.

20      On November 14, 2013, the parties filed their update regarding the scheduling of depositions.

21  *See* 11/14/2013 CMC Statement, ECF No. 122.  Defendants' counsel represented that they tried to

22  arrange dates and advised their clients of the potential consequences identified in the undersigned's

23  October 18 order, but Defendants failed to cooperate.  *Id.* at 2.  Defendants' counsel said that they

24  intended to renew their motion to withdraw, and Black & Decker's counsel said that it would file a

25  motion for default judgment.  *Id.*

## IV.  SPOLIATION MOTION

27      On September 20, 2013, Black & Decker filed its spoliation motion based on Mr. Deng

28  "recycling" his computer two weeks after the district court entered the stipulated preliminary

UNITED STATES DISTRICT COURT
For the Northern District of California

REPORT AND RECOMMENDATIONS (C 12-04516 SC (LB))

UNITED STATES DISTRICT COURT
For the Northern District of California

injunction order.  *See* Motion for Sanctions, ECF No. 105 at 3.  The chronology of the alleged

spoliation is as follows.

On October 2, 2012, Black & Decker asked Defendants to start producing information directly

from Mr. Deng.  Keats Decl., ECF No. 106, Exs. 1 & 2.  On October 3, 2012, Mr. Deng recyled his

laptop.  The basis for this conclusion is that on May 3, 2013, the U.S. Marshals seized computers,

counterfeit batteries and power tools, and documents, including a receipt from eWaste Recycling

Center dated October 3, 2012 that certified that a "Laptop" from "Billy Deng" would "be destroyed

and not reused."  *Id.* ¶ 2 & Ex. 3.  Among other things, the communications between counsel show

the following.

| Date | Content of Communication |
|------|--------------------------|
| 10/2/12 | Black & Decker's counsel asked, "When can we expect the source information for the batteries and tools sold by Mr. Deng?  We would also like to get samples of the refurbished tools that Mr. Deng was selling."  Keats Decl., Ex. 1, ECF No. 106-1 at 10. |
| 10/2/12 | Defendants' counsel responded that he sent his client an email earlier that day "informing him that you would like two of the refurbished drills sent to your office.  I'll let you know once I receive a response.  The supplier info. is provided below."  *Id.* at 9 (providing two supplier names in China). |
| 10/2/12 | Black & Decker's counsel asked which is the supplier of the batteries and which is the supplier of the tools.  *Id.* |
| 10/3/12 | Defendants' counsel responded that he had the question out to his client and would respond when he hears back.  *Id.* at 8. |
| 10/5/12 | Black & Decker's counsel asked if Defendants' counsel had heard back.  *Id.* |
| 10/5/12 | Defendants' counsel responded that he had not heard back but would tell him as soon as he did.  *Id.* |

On November 12, 2012, Black & Decker wrote to Defendants' counsel asking to arrange for

Black & Decker's computer forensic examiner to inspect and copy Mr. Deng's hard drive.  Keats

Decl., ECF No. 106, ¶ 7 & Ex. 2, ¶ 2.  Defendants' counsel responded that he was still "trying to

connect with [his] client on the computer situation."  *Id.*

Defendants' counsel notes that Black & Decker never propounded written discovery requests to

Mr. Deng.  Harrison Decl., ECF No. 117-1, ¶ 4.  Mr. Deng recycled his laptop because it was

broken, more than one month before Black & Decker propounded written discovery and before

Black & Decker's counsel's October 11, 2012 email that proposed employing a forensic expert to

UNITED STATES DISTRICT COURT
For the Northern District of California

1  examine Mr. Deng's computer.  *Id.* ¶¶ 3-4.  Defendants voluntarily produced information before

2  formal discovery, including contact information regarding product suppliers in China and

3  information regarding sales of the allegedly infringing products.  *Id.* ¶ 5.  Defendants produced

4  product samples and, following the mediation, a declaration outlining their business activities and

5  the names and roles of other persons involved.  *Id.*  They also produced over 250 documents

6  including spreadsheets with sales information.  *Id.*

7  **V.  SIGNIFICANT EVENTS SINCE NOVEMBER 21, 2013**

8        The court held a hearing on the spoliation motion on November 21, 2013.  Following the

9  hearing, and with the parties' agreement,  the court terminated the motion for an adverse inference

10  sanction without prejudice to Black & Decker's raising its arguments and its request for fees and

11  costs in the context of a motion for default judgment.  *See* 11/21/13 Order, ECF No. 126.  The court

12  also described the sanctions it could impose for spoliation of evidence, including the award of

13  attorney's fees, costs, and terminating sanctions in the form of a default judgment against

14  Defendants.  *See id.*  The lodestar attorney's fees at this point were $5,460.  *See* Joint Letter Brief,

15  ECF No. 111 at 4.  The court ordered Defendants to make themselves available for depositions

16  during the week of December 2, 2013 and ordered Defendants' counsel to provide a copy of the

17  order to Defendants and to warn them of the sanctions they faced.  *See* 11/21/13 Order, ECF No. 126

18  at 9-10.

19        Mr. Deng then responded to the court by letter dated November 26, 2013, postmarked December

20  2, 2013 from San Jose, and filed on December 3, 2013.  11/26/2013 Letter, ECF No. 127.  In it, Mr.

21  Deng said that he was in China, said that he could not return "before Dec 17," and asked to

22  "reschedule my deposition after 1/2/20[14]."  *Id.*  The court then ordered him to appear by telephone

23  at the December 12, 2013 case management conference, ordered that he must be available for

24  depositions during the week of January 6, 2014, and warned him that if he did not comply with the

25  court's orders, he risked the sanctions discussed in the previous paragraph.  *See* 12/9/13 Order, ECF

26  No. 130.  The court sent an email copy to Mr. Deng at Land628@yahoo.com and directed

27  Defendants' counsel to provide a copy to Mr. Deng immediately.

28        At the December 12, 2013 case management conference, counsel and Mr. Deng appeared by

REPORT AND RECOMMENDATIONS (C 12-04516 SC (LB))

UNITED STATES DISTRICT COURT
For the Northern District of California

telephone.  *See* 12/12/2013 Minute Order, ECF No. 133.  Mr.  Deng said that he was in China but was returning to the United States later in the month.  The parties and Mr. Deng agreed that his deposition would occur on January 10, 2014.  *See id.*

The clerk's notice at Docket Entry No. 134 shows that Mr. Deng provided his contact information and said that he would be "presenting . . . on January 10, 2014" by himself.  The court directed counsel to coordinate with Mr. Deng about where he was supposed to appear for his deposition.  *See* Docket Entry, ECF No. 134.

On December 20, 2013, Black & Decker's counsel confirmed with Defendants' counsel that the deposition would go forward on January 10, 2014.  *See* Letter Brief, ECF No. 136 at 2 & Ex. 2.  On January 6, 2010, they confirmed through email that they planned to travel to San Francisco to depose Mr. Deng and for the potential Rule 30(b)(6) deposition of D&L Elite Investments, LLC on January 10, 2014.  *Id.*, Ex. 3.  Plaintiffs hired a videographer and court reporter for $478.62 in total costs.  *See id.*, Ex. 4.  On January 10, 2014, Black & Decker's counsel flew from Los Angeles to San Francisco for the depositions.  *See id.*, Ex. 5.  The airfare was $331.60 and taxi costs to and from the airport were $115.  McArthur Decl., ECF No. 136-1, ¶ 5.  After they arrived at Defendants' counsel's law offices in San Francisco, they learned from defense counsel via an email sent that morning at 8:42 a.m. that "I just received notice from Mr. Deng that he is sick and will not be appearing for his deposition today."  Letter Brief, ECF No. 136 at 2 & Exs. 4, 6.  They went on the record to confirm that Mr. Deng did not appear for his deposition.  *Id.*, Ex. 4.

Black & Decker then renewed its request for terminating sanctions and fees and costs.  It supported the appropriate documentation and authority for its additional costs and lodestar fees as of January 14, 2014.  *Id.* at 4-6.  The summary of the amounts as of this date are as follows: (1) $5,232.50 for the spoliation motion; (2) $5,460 for the motion to compel; (3) $8,190 for deposition preparation; and (4) $4,550 for the January 14, 2014 motion for sanctions.  *See* 1/14/14 Letter Brief, ECF No. 136 at 5; McArthur Decl., ECF No. 136-1, ¶ 9.

Defendants then opposed the motion on the ground that Mr. Deng was sick and was in fact participating in the litigation.  *See* Opposition, ECF No. 140.  Mr. Deng sent an email to the court on January 16, 2014 saying that he was still very sick.  *See* 1/16/2014 Letter, ECF No. 139.  The court

UNITED STATES DISTRICT COURT
For the Northern District of California

1    held a case management conference call on February 6, 2014 to discuss with Black & Decker's

2    counsel the record supporting terminating sanctions and to suggest that given the legal standards, the

3    record might be cleaner if they tried one more time to notice a deposition. *See* 2/6/2014 Minute

4    Order, ECF No. 142.  Plaintiffs renoticed the depositions for February 19, 2014. *See* 2/18/2014

5    Letter Brief, ECF No. 144 at 1 & Exs. 1-2.  Defendants' counsel then informed Black & Decker's

6    counsel that Mr. Deng was out of the country and would not appear for his deposition. *Id.*, Ex. 3.

7    Mr. Deng emailed the court on February 18, 2014, confirming that he had returned to China and said

8    the following, "today I have come out a decision that I want to give up all of my rights related to this

9    case which plaintiff's lawyer has suited.  I will take all of judge liabilities from this case at what ever

10   will be." *See* 2/18/2014 Clerk's Notice, ECF No. 143 (attaching email).

11        Black & Decker's counsel filed a supplemental letter brief and supporting declaration in support

12   of its motion for sanctions and submitted appropriate documentation establishing additional lodestar

13   fees of $1,770. *See*  2/18/2014 Letter Brief, ECF No. 144; Keats Decl., ECF No. 144-1 ¶ 5.  The

14   total fees and costs that Black & Decker now requests as a sanction are $26,124.42.

15        The court held a hearing on February 20, 2014.  2/20/2014 Minute Order, ECF No. 145.

16   Defendants' counsel confirmed that at this point, Mr. Deng had returned to China and was not

17   participating in the litigation.  The court discussed the following issues with Black & Decker: (1) the

18   district court's previous grant of leave to amend to add new defendants; (2) the effect that adding

19   new defendants might have on the ability to grant default judgment now for defaulting defendants;

20   and (3) the need to submit a basis for damages so that the undersigned could recommend terminating

21   sanctions to the district court.

22        After the hearing, the undersigned imposed $26,124.42 in costs and fees as a sanction for

23   Defendants' discovery abuses. *See* 2/24/2010 Order, ECF No. 146.  The court noted that Black &

24   Decker's records supported the costs and lodestar amounts they requested as sanctions and awarded

25   them after considering the legal standards for discovery abuses (also set forth below). *See id.*  The

26   court noted that it had warned Defendants repeatedly about the consequences of not participating in

27   the litigation, and as part of that process, set forth the legal standards in its orders, gave detailed

28   context in the form of the chronology of bad behavior, and gave Defendants multiple opportunities

REPORT AND RECOMMENDATIONS (C 12-04516 SC (LB))

1   to participate in the litigation despite their prior failure to do so. *See id.* Despite those warnings,

2   they refused to participate. *See id.* Given the discovery abuses described above, the court held that

3   the amounts of discovery sanctions were appropriate. *See id.* The court noted that the hours spent

4   by Plaintiffs' counsel were reasonable, and Plaintiffs' counsel's rates also were reasonable in

5   comparison with others in the community. *See id.*

6       The undersigned also addressed Black & Decker's request for terminating sanctions, concluded

7   that it had established a sufficient record that terminating sanctions were appropriate, and directed it

8   to submit information to establish damages and the amount of any judgment. *See id.* at 11-13.

9       The undersigned noted other issues that affected the entry of judgment, including the district

10  court's previous grant of leave to amend to add new defendants, and Black & Decker's need to

11  decide whether it would add them. *See id.* at 11-12. The court noted this consideration because if

12  new defendants appeared, then concerns about inconsistent judgments might militate in favor of

13  postponing entry of judgment against the no-longer-participating defendants. *See id.* at 12.

14  Specifically, the court stated that

15      If liability is apportioned or joint and several as to the existing defendants and any new
    defendants, then an entry of judgment against the currently-defaulting defendants might be
16  problematic, even if the factors in *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986),
    otherwise suggest that there is no just reason for delay in entering default judgment against the
17  defaulting defendant.

18      The Supreme Court has cautioned that the court should not enter a default judgment which is,
    or is likely to be inconsistent with a judgment on the merits as to any answering defendants. *See*
19  *Frow v. De La Vega*, 82 U.S. 552 (1872). As the Ninth Circuit has explained, *Frow* stands for
    the proposition that "where a complaint alleges that defendants are jointly liable and one of them
20  defaults, judgment should not be entered against the defaulting defendant until the matter has
    been adjudicated with regard to all defendants." *In re First T.D. & Invest., Inc.*, 253 F.3d 520,
21  532 (9th Cir. 2001). If the answering defendants prevail, then the action should be dismissed
    against both answering and defaulting defendants. *Id.* The Ninth Circuit has extended the
22  applicability of this rule beyond pure joint liability cases, and held that default judgments should
    not be entered against a defaulting defendant if there are non-defaulting defendants "who are
23  similarly situated, even if not jointly and severally liable" where necessary to avoid an
    inconsistent result. *Id.* As Judge Chen explained in a report and recommendation interpreting
24  this line of cases, "*Frow*'s applicability turns not on labels such as 'joint liability' or 'joint and
    several liability,' but rather on the key question of whether under the theory of the complaint,
25  liability of all the defendants must be uniform. Where *Frow* applies, it would be an abuse of
    discretion to enter a default judgment against some but not all defendants prior to adjudication of
26  the claims against answering defendants." *Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp.
    2d 995, 1008 (N.D. Cal. 2001) (citations omitted).

27

28  *Id.* at 12-13.

## VI. MOTIONS TO STRIKE THE ANSWER AND ENTER DEFAULT JUDGMENT

On April 18, 2014, in response to this court's previous directive to present proof of damages in support of its motion for terminating sanctions and entry of default judgment, Black & Decker moved to strike Defendants' Answer and enter judgment against the three appearing (and now non-participating) defendants. *See* Motion to Strike, ECF No. 151; Motion for Default Judgment, ECF No. 153. It said that it would not amend the complaint to add new defendants and instead sought default judgment only against the existing defendants: D & L Elite, Mr. Deng, and Mr. Luo. Motion for Default Judgment, ECF No. 153 at 17. It asks for the following: enhanced statutory damages of $4,000,000 (or $1,000,000 for each of its four marks); prejudgment and post-judgment interest, attorney's fees and costs (to be substantiated in supplemental filings), and a permanent injunction with the same terms as the parties' stipulated preliminary injunction. *See id.* at 28, 35.

Black & Decker grounds its request for enhanced statutory damages on its estimates of its actual damages, either in the form of its lost revenue or Defendants' profits. *See id.* at 30. For example, it assumes monthly sales of 494 batteries based on the U.S. Marshal's seizure of 494 counterfeit batteries on May 3, 2013 (valued by Black & Decker at $40,000). *See id.* It also points to actual sales to Paul Asbury from September to December 2012 sales of 205 to 353 counterfeit batteries for a total invoiced value of $43,758. *See id.* at 30. Then, assuming sales of 494 batteries for 48 months (the limitations period), it calculates potential damages of $1,920,000 ($40,000 times 48 months). Given the availability of treble damages, it argues that enhanced statutory damages of $4,000,000 are appropriate.

## VII. DEFENDANTS' RESPONSE AND HEARING

On April 28, 2014, the undersigned directed Defendants' counsel to send Defendants the court's February 24, 2014 order and to advise them of the pending motions and Black & Decker's requested relief (including a case-dispositive sanction in the form of a judgment against Defendants) and the hearing date and time. *See* 4/28/2014 Order, ECF No. 159.

On May 6, 2014, Defendants filed their responses to both of Black & Decker's motions. *See* Opp'n to Motion for Default Judgment, ECF No. 160; Opp'n to Motion to Strike, ECF No. 161.

1   Defendants' oppositions are supported by counsel's declarations.[4]  *See* Harrison Decl., ECF No.

2   160-1; Harrison Decl., ECF No. 161-1.

3      Black & Decker filed a combined reply brief on May 9, 2014.  *See* Reply, ECF No. 162.  On

4   June 18, 2014, the undersigned had a hearing.  *See* 6/18/2014 Minute Order, ECF No. 166.

5                                          **ANALYSIS**

6      Black & Decker asks for terminating sanctions in the form of a judgment against Defendants.

7   *See* Letter Brief, ECF No. 136; Supplemental Letter Brief, ECF No. 144.  In support of that motion,

8   and at the court's directive, Black & Decker moved to strike Defendants' answer and enter default

9   judgment and a permanent injunction against Defendants.  *See* Motion to Strike, ECF No. 151;

10  Motion for Default Judgment, ECF No. 153.  The court recommends that the district court impose

11  terminating sanctions and enter judgment and a permanent injunction against Defendants for their

12  failure to participate in this litigation.

13  **I. TERMINATING SANCTIONS ARE APPROPRIATE**

14     When a district court decides to impose sanctions or discipline, it must clearly delineate under

15  which authority it acts to insure that the attendant requirements are met.  *Weissman v. Quail Lodge,*

16  *Inc.*, 179 F.3d 1194, 1200 (9th Cir. 1999) (citing *Keegan Management Co. Sec. Litig.*, 78 F.3d 431,

17  435 (9th Cir. 1996) ("For a sanction to be validly imposed, the conduct must be sanctionable under

18  the authority relied on.") (internal quotation marks and citation omitted)).  "The imposition of

19  sanctions requires a statement of reasons for the district court's action, including the need for the

20  particular sanctions imposed."  *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1081 (9th Cir. 2000)

21  (citing *G.J.B. & Assocs., Inc. v. Singleton*, 913 F.2d 824, 830 (10th Cir. 1990) ("If the district court

22  ultimately imposes sanctions, detailed findings are necessary to identify the objectionable conduct

23  and provide for meaningful appellate review.")).

24     The first motion for sanctions was based on the alleged spoliation of computer evidence by Mr.

25  Deng's recycling his laptop.  Spoliation is the destruction or significant alteration of evidence, or the

26  failure to preserve property for another's use as evidence in pending or reasonably foreseeable

27  ───────────────────

28      [4] The oppositions and supporting declarations are substantively identical and nearly
    verbatim.  Accordingly, this order cites just the opposition and declaration at ECF No. 160 & 160-1.

14

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

litigation. *United States v. Kitsap Physicians Svs.*, 314 F.3d 995, 1001 (9th Cir. 2002). A party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster, Inc. Copyright Litigation*, 462 F. Supp. 2d 1060, 1070 (N.D. Cal. 2006) (citation omitted). This duty extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *Id.* at 1067.

"A federal trial court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence." *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). Courts are invested with inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)). "This circuit has recognized as part of a district court's inherent powers the 'broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial. Within this discretion lies the power . . . to exclude testimony of witnesses whose use at trial . . . would unfairly prejudice an opposing party.'" *Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.*, 982 F.2d 363, 368 (9th Cir. 1992) (quoting *Campbell Indus. v. M/V Gemini*, 619 F.2d 24, 27 (9th Cir. 1980)). Although the caselaw is somewhat equivocal about the state of mind required to impose sanctions under the court's inherent power, *see United Medical Supply Co., Inc. v. U.S.*, 77 Fed. Cl. 257, 266-67 (Fed. Cl. 2007), the Ninth Circuit has concluded that sanctions are available under the court's inherent power if "preceded by a finding of bad faith, or conduct tantamount to bad faith," such as recklessness "combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *see Gomez v. Vernon*, 255 F.3d 1118, 1134 (9th Cir. 2001).

Courts may sanction parties responsible for spoliation of evidence in a few ways. First, a court may instruct the jury that it may draw an adverse inference against the party or witness responsible for destroying the evidence. *See Glover*, 6 F.3d at 1329. Second, a court may exclude witness testimony based upon the destroyed evidence and proffered by the party responsible for destroying the evidence. *Id.* at 1329. Third, the court may dismiss the claim of the party responsible for

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1   destroying the evidence but this is only appropriate where "a party has engaged deliberately in

2   deceptive practices that undermine the integrity of judicial proceedings." *Leon*, 464 F.3d at 958.

3   Also, even when a moving party does not demonstrate prejudice, a court may impose monetary

4   sanctions. *See, e.g.*, *Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 501 (E.D. Cal. 2010);

5   *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 685 F. Supp. 2d 456, 467

6   (S.D.N.Y. 2010); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y. 2008).

7        "A terminating sanction, whether default judgment against a defendant or dismissal of a

8   plaintiff's action, is very severe." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*,

9   482 F.3d 1091, 1096 (9th Cir. 2007).  "Only 'willfulness, bad faith, and fault' justify terminating

10  sanctions."  *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)).  The Ninth

11  Circuit has "constructed a five-part test, with three subparts to the fifth part, to determine whether a

12  case-dispositive sanction under Rule 37(b)(2) is just: '(1) the public's interest in expeditious

13  resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the

14  party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5)

15  the availability of less drastic sanctions.'"  *Id*. (quoting *Jorgensen*, 320 F.3d at 912 (setting forth

16  five-factor test set forth in *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987)).  "The

17  sub-parts of the fifth factor are whether the court has considered lesser sanctions, whether it tried

18  them, and whether it warned the recalcitrant party about the possibility of case-dispositive

19  sanctions."  *Id*. (citing *Valley Eng'rs v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998)).[5]

20       A party suffers sufficient prejudice to warrant case-dispositive sanctions where the disobedient

21

22       [5] "This 'test,'" the Ninth Circuit has explained, "is not mechanical."  *Connecticut General*,
23  482 F.3d at 1096.  It provides the district court with a way to think about what to do, not a set of
    conditions precedent for sanctions or a script that the district court must follow:

24
         Like most elaborate multifactor tests, our test has not been what it appears to be, a
25       mechanical means of determining what discovery sanction is just. The list of factors
         amounts to a way for a district judge to think about what to do, not a series of
26       conditions precedent before the judge can do anything, and not a script for making
         what the district judge does appeal-proof.
27

28  *Valley Eng'rs*, 158 F.3d at 1057.

1   party's actions "impair the defendant's ability to go to trial or threaten to interfere with the rightful

2   decision of the case." *See in re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d

3   1217, 1227 (9th Cir. 2006) (quotation omitted).  For example, failure to produce documents as

4   ordered is by itself prejudice enough to authorize terminating sanctions.  *See Computer Task Grp.,*

5   *Inc. v. Brotby*, 364 F.3d 1112, 1116 (9th Cir. 2004).

6        Before ordering a terminating sanction, a court must warn the offending parties and try other

7   sanctions first. For example, a district court's failure to warn a party that dismissal is being

8   considered as a sanction weighs heavily against the sanction. *U.S. for Use and Ben. of Wiltec Guam,*

9   *Inc. v. Kahaluu Const. Co., Inc.*, 857 F.2d 600, 605 (9th Cir. 1988).  Although "[a]n explicit warning

10  is not always required, at least in a case involving 'egregious circumstances,'" "[i]n other

11  circumstances, the failure to warn may place the district court's order in serious jeopardy." *Id.*

12  (citing *Malone*, 833 F.2d at 132-33).  Indeed, "'[f]ailure to warn has frequently been a contributing

13  factor in [Ninth Circuit] decisions to reverse orders of dismissal.'" *Id.* (quoting *Malone*, 833 F.2d at

14  133 (citing cases)).

15       The court previously found that Black & Decker had met the heavy burden to establish the

16  appropriateness of terminating sanctions.  *See* 2/24/14 Order, ECF No. 146 at 11.  The undersigned

17  warned Defendants repeatedly about the consequences of not participating in the litigation, advised

18  them of the legal standards, set forth the chronology of their behavior and refusal to participate in

19  their litigation, and gave them repeated opportunities to participate in the litigation. *See id.*  They

20  have not.

21       In their opposition, Defendants make a number of arguments that terminating sanctions are

22  inappropriate.  *See* Opp'n, ECF No. 160 at 2-4. These arguments are not persuasive.  First,

23  Defendants argue that Black & Decker seeks to hold them liable for the activities of other

24  individuals and entities.  *Id.* at 2.  Defendants' recourse in that case is to litigate.  As discussed,

25  however, they refuse to participate in the litigation.  Second, Defendants contend that they

26  cooperated in discovery and that they have not refused to litigate.  As discussed above, however, the

27  factual record shows otherwise.  Finally, Defendants reiterate their explanations for Mr. Deng's

28  destruction of his laptop and repeated failure to appear for noticed depositions.  *See id.* at 3-4.

REPORT AND RECOMMENDATIONS (C 12-04516 SC (LB))

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Defendants made these same arguments in connection with the most recent motion for sanctions, *see*

2    ECF Nos. 116, 140, and the court rejected them, *see* ECF No. 146.

3         Accordingly, the undersigned recommends terminating sanctions.

## II. STRIKING DEFENDANTS' ANSWER

5         Where a defendant engages is held in contempt of court or engages in "abusive litigation

6    practices," a district court has the power to strike the answer and enter a default judgment against the

7    defendant." *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).  As set forth

8    in the previous section, the undersigned recommends the imposition of terminating sanctions.  It also

9    recommends striking the answer so that judgment may be entered against Defendants and in favor of

10   Black & Decker.

## III. JURISDICTION

12        Before entering default judgment, a court must determine whether it has jurisdiction over

13   defendants.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  A court must also ensure the

14   adequacy of service on the defendant.  *See Timbuktu Educ. v. Alkaraween Islamic Bookstore*, No. C

15   06–03025 JSW, 2007 WL 1544790, at *2 (N.D. Cal. May 25, 2007).  A defaulting party that has

16   appeared in the action is entitled to notice at least seven days prior to the hearing.  *See* Fed. R. Civ.

17   P. 55(b)(2).

### A. Subject-Matter Jurisdiction

19        District courts have original jurisdiction to hear civil cases arising under the Constitution, laws,

20   or treaties of the United States.  28 U.S.C. § 1331.  Black and Decker's trademark and trade dress

21   claims arise under federal law, namely (1) trademark counterfeiting in violation of  15 U.S.C.

22   §§ 1114-17; (2) trademark infringement, 15 U.S.C. § 1114; (3) false designation of origin, 15 U.S.C.

23   § 1125(a); (4) trade dress infringement, 15 U.S.C. § 1125(a); and (5) trademark dilution, 15 U.S.C.

24   § 1125(c).  The court has federal question jurisdiction over these claims under 28 U.S.C. § 1331 and

25   supplemental jurisdiction over the remaining state law claims under 28 U.S.C. § 1367.

### B. Personal Jurisdiction and Service

27        Black & Decker must establish that this court has personal jurisdiction over Defendants.  *Scott v.*

28   *Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).  It served Defendants Deng and D&L Elite personally,

and all Defendants engaged in the activities that are the subject of this lawsuit in the Northern District of California. *See* ECF Nos. 28, 31; Complaint, ECF No. 1, ¶¶ 8-9. It did not serve Mr. Luo personally but his attorney apparently accepted service on his behalf, and he thereafter answered the complaint.

Federal Rule of Civil Procedure 4(h)(1)(B) allows for service in a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer . . . or any other agent authorized by appointment or by law to receive service of process . . . ." Similarly, Rule 4(h)(1)(A) authorizes service of process on corporations "in the manner prescribed by Rule 4(e)(1) for serving an individual." Rule 4(e)(1) allows for service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under California law, "[a] summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served." Cal. Civ. Proc. Code § 415.10. A summons can be served on a corporation by delivering a copy of the summons and of the complaint to the person designated as agent for service of process. Cal. Civ. Proc. Code § 416.10(a). A summons can also be served on a corporation by delivering a copy of the summons and complaint to the president, chief executive officer, or other head of the corporation. Cal. Civ. Proc. Code § 416.10(b).

"Rule 4 is a flexible rule  that should be liberally construed so long as a party received sufficient notice of the complaint." *Benny v. Pipes*, 799 F.2d 489, 492 (9th Cir. 1986). Unless there is "substantial compliance with Rule 4," actual notice alone will not suffice to establish personal jurisdiction. *Id.* "A general appearance or responsive pleading by a defendant that fails to dispute personal jurisdiction will waive any defect in service or personal jurisdiction." *Id.*; Fed. R. Civ. P. 12(h)(1).

Mr. Luo appeared in this lawsuit through counsel, answered the complaint, asserted affirmative defenses, and admitted that the court had personal jurisdiction over him. *See* Answer, ECF No. 33, ¶ 4. The court has personal jurisdiction over all defendants.

**C. Notice of Hearing**

Defendants still are represented by counsel. When the defaulting party "has appeared personally

UNITED STATES DISTRICT COURT
For the Northern District of California

1    or by a representative, that party or its representative must be served with written notice of the

2    application at least 7 days before the hearing."  Fed. R. Civ. P. 55(b)(2).  Defendants have ben

3    served through the court's ECF system.  *See* N.D. Cal. Civil L.R. 5-1(h) (providing that except for

4    case-initiating documents, receipt of the court's Notice of Electronic Filing email messages

5    "constitutes service on the receiving party").  Defendants' counsel appeared at the hearing.  *See* ECF

6    No. 156 (request to appear telephonically); Minute Order, ECF No. 166.  The court also directed

7    Defendants' counsel to notify Defendants of the motions, Black & Decker's requested relief, and the

8    possibility of case-dispositive sanctions, including a judgment in favor of Black & Decker.  *See*

9    4/28/14 Order, ECF No. 160.  The court followed this process with the many discovery orders it

10   issued.  *See, e.g.*, 1/16/14 Order, ECF No. 138; 12/9/13 Order, ECF No. 130; 11/21/13 Order, ECF

11   No. 126; 10/18/13 Order, ECF No. 114; 10/11/13 Order, ECF No. 112.

12       Notice is sufficient for Rule 55(b)(2) purposes.  Also, Defendants have been apprised fully of the

13   sanctions that the court recommends in this order.

14   **IV.  ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE**

15       Under Federal Rule of Civil Procedure 55(b)(2), a plaintiff may apply to the district court

16   for—and the court may grant—a default judgment against a defendant who has failed to plead or

17   otherwise defend an action.  *See Draper v. Coombs*, 792 F.2d 915, 925 (9th Cir. 1986).  Default

18   judgments are generally disfavored because "cases should be decided on the merits whenever

19   reasonably possible."  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  The court must

20   consider the following factors when deciding whether to use its discretion to grant a motion for

21   default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

22   substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action;

23   (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable

24   neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions

25   on the merits.  *Id*. at 1471-72. These factors weigh in favor of default judgment against Defendants.

26       **A.  Merits and Sufficiency (prongs two and three of the *Eitel* test)**

27       After entry of default, well-pleaded allegations in the complaint regarding liability and entry of

28   default are taken as true, except as to damages.  *See Fair Housing of Marin v. Combs*, 285 F.3d 899,

UNITED STATES DISTRICT COURT
For the Northern District of California

906 (9th Cir. 2002).  The court is not required to make detailed findings of fact.  *Id.*  Default

judgment cannot exceed the amount demanded in the pleadings.  Fed. R. Civ. P. 54(c).  When

considering the *Eitel* factors, the merits of a plaintiff's substantive claims (the second *Eitel* factor)

and the sufficiency of the complaint (the third *Eitel* factor) are often analyzed together.  These two

factors require that the plaintiff's allegations "state a claim on which the [plaintiff] may recover."

*Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978).

Here, Black & Decker asserts claims for (1) trademark counterfeiting, 15 U.S.C. §§ 1114-17; (2)

trademark infringement, 15 U.S.C. § 1114; (3) false designation of origin, 15 U.S.C. § 1125(a); (4)

trade dress infringement, 15 U.S.C. § 1125(a); (5) trademark dilution, 15 U.S.C. § 1125(c); (6)

unfair competition, Cal. Bus. & Prof. Code § 17200, *et seq.*; (7) state trademark dilution, Cal. Bus. &

Prof. Code § 14247; (8) common law unfair competition; and (9) constructive trust, Cal. Civ. Code

§ 2224.  Complaint, ECF No. 1, ¶¶ 30-96.  In its motion for default judgment, Black & Decker seeks

to recover statutory damages rather than actual damages.  *See* Motion for Default Judgment, ECF

No. 153 at 27.  Statutory damages are available as relief only for the use of counterfeit marks.  *See*

15 U.S.C. § 1117(c).  Accordingly, the court examines only Black & Decker's claim for trademark

counterfeiting and infringement.  *See Coach, Inc. v. Diana Fashion*, No. 11-2315 SC, 2011 WL

6182332, at *2 (Dec. 13, 2011) (adopting same approach); *Coach, Inc. v. Diva Shoes & Accessories*,

No. 10-5151 SC, 2011 WL 1483436, at *4 (N.D. Cal. Apr. 19, 2011) (same); *Chanel, Inc. v.

Tshimanga*, No. C-07-3592 EMC, 2008 U.S. Dist. LEXIS 118783, at *17 (N.D. Cal. July 15, 2008)

(same).

The special civil monetary remedies against counterfeiting in § 1117(c) require a plaintiff to

establish the following: (1) [defendant] intentionally used a counterfeit mark in commerce; (2)

knowing the mark was counterfeit; (3) in connection with the sale, offering for sale, or distribution

of goods; and (4) its use was likely to confuse or deceive.  *State of Idaho Potato Comm'n v. G & T

Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).  Here, Black & Decker's complaint

alleges that Defendants sold counterfeit versions of Black & Decker's trademarked DeWalt batteries

that were likely to cause confusion.  *See* Complaint, ECF No. 1, ¶¶ 26-40, Ex. 3 (photograph of

genuine DeWalt battery), Ex. 4 (photograph of Defendants' allegedly counterfeit battery).  Black &

Decker is the exclusive distributor or licensor in the United States of the DeWalt Trademarks and Trade Dress. *Id.* ¶ 16. The factual record of this case, including Defendants' violation of the district court injunction, establishes that Defendants used the counterfeit mark intentionally. Taking these allegations as true, Black & Decker has adequately stated a claim on which it may recover. Accordingly, the second and third *Eitel* factors weigh in favor of entering default judgment.

**B. The Remaining *Eitel* Factors**

The remaining *Eitel* factors also weigh in favor of granting default judgment.

### 1. The Possibility of Prejudice to Plaintiffs

If the motion is not granted, Black & Decker will be denied a remedy until such time as Defendants decide to participate in this action, which may never occur. Thus there is a sufficient likelihood of prejudice that weighs strongly in favor of entry of default judgement.

### 2. The Possibility of a Dispute Concerning a Material Fact

Here, Defendants have appeared in this action but have apparently abandoned their defense. Thus, there is no indication that there might be a disputed issue of material fact. Moreover, the issues are straightforward: whether Defendants willfully infringed Black & Decker's trademark copyright, and what the statutory damages for that infringement are. This factor, therefore, favors the entry of default judgment.

### 3. Excusable Neglect

There is no evidence that Defendants' decision to stop participating in this proceeding is due to excusable neglect. Due process requires that interested parties be given notice of an action and be afforded an opportunity to object before final judgment issues. *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950). Defendants answered the complaint and appeared through counsel before refusing to litigate. Therefore, this factor favors entry of default judgment.

### 4. The Sum of Money at Stake in the Action

When the money at stake in the litigation is substantial or unreasonable, default judgment is discouraged. *See Eitel*, 782 F.2d at 1472 (three-million dollar judgment, considered in light of parties' dispute as to material facts, supported decision not to enter default judgment); *Tragni v. Southern Elec. Inc.*, No. 09-32 JF, 2009 WL 3052635, at *5 (N.D. Cal. Sept. 22, 2009); *Board of*

UNITED STATES DISTRICT COURT
For the Northern District of California

*Trustees v. RBS Washington*, 2010 WL 145097, at *3 (*citing Eitel*, 782 F.2d at 1472).  Nevertheless, where the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate.  *See Board of Trustees of the Sheet Metal Workers Health Care Plan v. Superhall Mechanical, Inc.*, No. C–10–2212 EMC, 2011 WL 2600898, at *3 (N.D. Cal. June 30, 2011) (the sum of money for unpaid contributions, liquidated damages, and attorneys fees were appropriate as they were supported by adequate evidence provided by plaintiffs).

Here, Black & Decker seeks an award holding Defendants jointly and severally liable for enhanced statutory damages of $4,000,000, pre- and post-judgment interest, attorney's fees, and costs.  *See* Motion for Default Judgment, ECF No. 153 at 26-34.  This is a substantial monetary award.  On the other hand, Defendants sold copycat products bearing Black & Decker's trademarks.  They continued to sell these products in violation of the district court's temporary restraining order.  *See* Order, ECF No. 78.  The district court thus awarded civil contempt sanctions against them in the amount of $43,758.  *See id.* at 7-8; *see also* ECF No. 85, ¶ 23 (Black & Decker's unopposed submissions for a lodestar amount of $87,921 in fees and $2,030 in costs).  Defendant Deng destroyed his computer hard drive and evaded properly noticed (and court-ordered) depositions.  All Defendants refused to participate in their litigation.  *See supra* Statement.  The undersigned thus imposed sanctions of $26,124.42.  *See* Order, ECF No. 146 at 11.

On balance, the record supports a substantial monetary award.  Because the size of the statutory damages award is limited by what the court considers just, this factor weighs in favor of granting the motion for default judgment.  *See Diva Shoes*, 2011 WL 1483436, at *4 (stating that judicial discretion over amount of statutory damages awarded for trademark counterfeiting supported entry of default judgment under this *Eitel* factor).

### 5. The Strong Policy in the Federal Rules that Favors Decisions on the Merits

When determining granting a default judgment, the court must consider the strong policy of the federal courts in favoring decisions on the merits.  This policy, however, is not dispositive; rather, the court still has great latitude in exercising its discretion with regards to the relative weight of the remaining *Eitel* factors.  *PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172 at 1177.  Despite the policy of favoring decisions on the merits, default judgment is appropriate when a

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

defendant refuses to litigate a case.  Fed. R. Civ. P. 55(b); *see RBS Washington*, 2010 WL 145097, at

*4.  Because Defendants participated in this case before abandoning their defense, this factor weighs

in favor of entering a default judgment against them.  As stated above, the court recommends entry

of default judgment and a permanent injunction as a sanction for Defendants' failure to participate in

their litigation.

## III.  RELIEF SOUGHT

Given the undersigned's recommendation, the issue is the amount of damages.  Black & Decker

seeks enhanced $4,000,000 in statutory damages for trademark counterfeiting and infringement

under the Lanham Act ($1,000,000 per infringed mark).  *See* Motion for Default Judgment, ECF No.

153 at 26.

### A.  Available Remedies for Trademark Infringement

The available remedies for trademark infringement are listed in 15 U.S.C. § 1117.  Under

§ 1117(a), a trademark owner may recover the following: (1) a defendant's profits; (2) any damages

sustained by the plaintiff; and (3) the costs of the action.  Absent extenuating circumstances, §

1117(b) requires the court to treble the damages assessed under subsection (a) if the defendant

"intentionally us[es] a mark or designation, knowing such mark or designation is a counterfeit mark .

. . in connection with the sale, offering for sale, or distribution of goods or services."  If § 1117(b)

applies, the court also must award reasonable attorney's fees and may award prejudgment interest.

*Id.*

In the alternative, "in a case involving the use of a counterfeit mark (as defined in section

1116(d) of this title)[6] in connection with the sale, offering for sale, or distribution of goods or

---

6  Section 1116(d) defines a "counterfeit mark" as "a counterfeit of a mark that is registered
on the Principal Register in the United States Patent and Trademark Office for such goods or
services sold, offered for sale, or distributed and that is in use, whether or not the person against
whom relief is sought knew such mark was so registered."  Here, Black & Decker's trade dress is a
"mark that is registered on the Principal Register . . . ."  *See* Complaint, ECF No. 1, Ex. 1; Motion
for Default Judgment, ECF No. 153 at 13.  Accordingly, the court finds that these are counterfeit
marks for purposes of 15 U.S.C. § 1117(c).  *See* 1 Charles E. McKenney & George F. Long III,
*Federal Unfair Competition: Lanham Act 43(a)* § 10:8 ("A proponent in a trademark or trade dress
infringement action may elect to recover actual or statutory damages.").

UNITED STATES DISTRICT COURT
For the Northern District of California

services," the plaintiff may elect to receive statutory damages. *Id.* § 1117(c). The plaintiff may recover statutory damages of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

*Id.* "Statutory damages are most appropriate if, as here, data regarding the business practices and profits of the defendants are unavailable due to lack of cooperation on the part of defendants." *Chanel, Inc. v. Doan*, No. C 05 03464 VRW, 2007 WL 781976, at *4 (N.D. Cal. Mar. 13, 2007).

Wilfulness can be inferred from a defendant's failure to defend. *See Herman Miller Inc. v. Alphaville Design, Inc.*, No. C 08-03437 WHA, at *9 (N.D. Cal. Oct. 22, 2009). Accordingly, given a statutory damages framework for awarding damages, the statutory damages could be between $1,000 and $2,000,000 per counterfeit mark per type of goods sold, as the court considers just.

**B. The Award of Damages Here**

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment may not differ in kind from, or exceed in amount, from what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The purpose of this rule is to ensure that a defendant is put on notice of the damages being sought against him so that he may make a calculated decision about how best to respond. *See In Re Ferrell*, 539 F.3d 1196 1192-93 (9th Cir 2008). "[E]ven a defaulting party is entitled to have its opponent produce some evidence to support an award of damages." *LG Elecs., Inc. v. Advance Creative Computer*, 212 F. Supp. 1171, 1178 (N.D. Cal. 2002).

Where a plaintiff elects to recover statutory damages, the court has broad discretion as to the size of the damages award. *See Peer Intern. Corp v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). Courts consider estimates of actual damages in calculating statutory damages. *See Herman Miller*, 2009 WL 3429739, at *9 (citing *Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999)). This practice "counteract[s] the profitability of counterfeiting and execute[s] the punitive purpose of the statute." *Doan*, 2007 WL 781976, at *4. Courts also consider the following factors used in establishing the amount of statutory damages to award under an

UNITED STATES DISTRICT COURT
For the Northern District of California

1   analogous provision of the Copyright Act:  (1) the expenses saved and the profits reaped by the

2   defendant; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent

3   effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful;

4   (6) whether a defendant has cooperated in providing particular records from which to assess the

5   value of the infringing material produced; and (7) the potential for discouraging the defendant.  *See,*

6   *e.g., Diva Shoes*, 2011 WL 1483436, at *6; *Tshimanga*, 2008 U.S. Dist. LEXIS 118783 at *34.

7       Where a reasonable estimate of actual damages is available, statutory damages awards generally

8   are comparable to the estimated actual damages.  *See, e.g.*, *Doan*, 2007 WL 781976 (awarding

9   $127,701 for willful infringement of trademarked handbags based on plaintiff's estimate of

10  defendants' profits, which was lower than the court's estimate); *Feiya Cosmetics, LLC v. Beyond*

11  *Beauty Int'l, LLC*, No. C-10-00967 JCS, 2011 WL 4506182 (N.D. Cal. Aug 29, 2011), *report and*

12  *recommendation adopted*, 2011 4506165 (N.D. Cal. Sept. 29, 2011) (awarding $400,000 in statutory

13  damages based on evidence of damages caused by infringement).

14      Without some evidence of actual damages, courts in this district award statutory damages at the

15  low end of the permissible range.  *See, e.g, Microsoft Corp. v. Coppola*, No. C 06-06701 WHA, at

16  *4 (May 24, 2007) (awarding plaintiff $2,000 – double the statutory minimum at the time – where

17  plaintiff established only that defendant distributed three counterfeit units of plaintiff's software and

18  infringed two trademarks); *Chanel, Inc. v. Lin*, No. C-09-04996 JCS, 2010 WL 2557503 (N.D. Cal.

19  May 7, 2010) *report and recommendation adopted,* C 09-04996 SI, 2010 WL 2557561 (N.D. Cal.

20  June 21, 2010) (lacking evidence of actual damages, the court awarded $456,000 based on the

21  statutory minimum of $1,000 per infringed  mark (19 marks) per type of goods sold (eight types –

22  handbags, wallets, belts, key chains, shoes and boots, jewelry, and watches), trebled to reflect

23  willfulness.

24      In the context of a default judgment without full discovery, the court applies some reasonable

25  assumptions to calculate a ballpark estimate of Defendants' profits.  *Accord Diva Shoes*, 2011 WL

26  1483436, at *7, n.3 (applying this approach) (citing *Coach, Inc. v. Ocean Point Gifts*, No. CIV.A.09-

27  4215 JBS, 2010 WL 2521444, at *7-8 (D.N.J. June 14, 2010) (same)).

28      Black & Decker identifies one proxy for its lost revenue:  the 494 counterfeit DeWalt batteries

UNITED STATES DISTRICT COURT
For the Northern District of California

1   that the U.S. Marshals Service seized on May 4, 2012.  *See* Keats Aff., ECF No. 53, ¶ 3.  Black &

2   Decker values these at $40,000.  *See id.*

3        Black & Decker also points to evidence of Defendants' profits in the form of invoices submitted

4   by Paul Asbury in support of Black & Decker's seizure application.  Those invoices show that

5   between September and November 2012, Defendants sold Mr. Asbury's business between 205 and

6   353 counterfeit DeWalt-branded batteries per month at a price of $30 to $35 per battery (depending

7   on the voltage) for average monthly sales of $11,000.  *See* Asbury Decl. Ex. 3, ECF No. 60-1 at 30-

8   42.

9        Black & Decker assumes from this evidence that 494 is a reasonable estimate of one month's

10  inventory.  That is the actual number of batteries on hand, and it is reasonable to assume that

11  Defendants had more customers than just Mr. Asbury and the monthly sales there of 205 to 353

12  batteries.  Black & Decker then assumes 48 months of sales (for the four years of the statute of

13  limitations).

14       Black & Decker valued the 494 seized batteries at $40,000, which apparently is based on a retail

15  value (which results in $81 per battery as opposed to $30 to $35 per battery charged by Defendants

16  depending on the voltage).  Multiplying $40,000 by 48 months yields $1,920,000.  Motion, ECF No.

17  153 at 30; Keats Aff., ECF No. 53, ¶ 3.  Treble damages results in a total of $5,760,000.  *See id.* at

18  30-31.  Plaintiffs do not include Defendants' costs because under 15 U.S.C. § 1117(a), plaintiffs

19  must prove only sales and a "defendant must prove all elements of cost or deduction claimed."   One

20  problem with this approach is that it is not clear that this figure is tied to Black & Decker's lost

21  revenues.  Black & Decker does not allege that only genuine DeWalt batteries are compatible with

22  DeWalt tools.  Because the price of genuine DeWalt batteries is substantially higher than

23  Defendants' counterfeit batteries, it is unlikely that Defendants' customers are likely to purchase

24  genuine DeWalt batteries.  *See Diva Shoes*, 2011 WL 1483436, at *8 (N.D. Cal. Apr. 19, 2011)

25  (reaching the same conclusion about genuine and counterfeit Coach brand products).

26       Another approach is an average battery price of $32.50 (based on the sales to Mr. Asbury and

27  others) times their extrapolated sales of 494 batteries per month, which results in total monthly

28  revenue of $16,055 (as opposed to the identified monthly sales to Mr. Asbury of $11,000).

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Extrapolating over the estimated 48-month statute of limitations period for damages, the total profits

2   are $770,640.  *See* Motion for Default Judgment at 30 (assuming infringement for the four-year

3   period within the statute of limitations).

4       A third proxy is to estimate the $11,000 in monthly sales to Mr. Asbury times 48 months for a

5   total of $528,000.

6       Here, it is not unreasonable to assume actual monthly sales during the defined time period as

7   something greater than the $11,000 in sales to Mr. Asbury.  That is because the Marshals seized

8   additional counterfeit batteries.  But extrapolating that to a 48-month period is not grounded in any

9   evidence.  Black & Decker might have some evidence for actual sales because they seized

10  Defendants' D&L's "[g]eneral ledger, tax records, and checkbook."  Keats Aff. Regarding Items

11  Seized, ECF No. 53, ¶ 17.  Black & Decker does not cite to these documents, and they seem to be

12  the logical place to look for evidence of Defendants' profits or sales.

13      The record also suggests that Black & Decker has additional information.  As recounted above,

14  Mr. Deng told its investigators that he kept approximately 200 batteries on hand.  It is not clear

15  whether investigators had any information about the time period that D & L sold batteries.  The

16  court's view is that without any evidentiary grounding, it is not reasonable to assume 48 months of

17  sales.  The shipping records seized from Defendants' place of business show that they have been

18  importing electrical drills and parts since at least March 11, 2011.  *See* McArthur Decl., Ex. 6, ECF

19  No. 75-5 at 10.  Based on this evidence, the court considers March 2011 to be a reasonable starting

20  point for the damages period.  Defendants continued selling the counterfeit DeWalt batteries in

21  violation of the court's temporary restraining order until at least March 2013.  Thus it seems

22  reasonable to assess damages through May 2013, when the district court issued its seizure order and

23  froze Defendants' financial accounts.  That equals a damages period of 26 months.  The undersigned

24  finds the most reasonable approach is to give Black & Decker the benefit of the doubt that

25  Defendants sold 494 counterfeit batteries per month at an average battery price of $32.50.  Over the

26  26 month damages period, that comes to $417,430.  Because Defendants acted willfully, actual

27  damages would be trebled to $1,252,290.

28      Black & Decker argues that the court should follow cases that awarded relatively higher

REPORT AND RECOMMENDATIONS (C 12-04516 SC (LB))

UNITED STATES DISTRICT COURT
For the Northern District of California

1   statutory damages.  *See* Motion for Default Judgment, ECF No. 153 at 31-32.  But in those cases, the

2   statutory damages had a plausible relationship to actual damages.  For example, in *Koninglijke*

3   *Philips Electronics, N.V. v. KXD Tech., Inc.*, the Ninth Circuit affirmed the district court's order

4   awarding the maximum statutory damages of $1,000,000 to the plaintiff after entering a default

5   judgment as a sanction for the defendant's discovery abuses, including destruction of a computer.

6   347 F. App'x 275, 276 (9th Cir. 2009).  The underlying district court opinion shows that the

7   statutory damages were plausible in light of the plaintiff's actual damages.  *See Koninklijke Philips*

8   *Electronics N.V. v. KXD Techs, Inc.*, No. 2:05-cv-01532-RLH-GWF, 2008 WL 2699701, at *6-7 (D.

9   Nev. July 2, 2008).  In April 2004, the defendants imported at least 800 cartons of counterfeit

10  products in a single shipment that on its own would have supported a treble damages award of

11  $380,616.  *Id.* at *6.  They continued infringing well into 2006.  Similarly, in *Philip Morris USA,*

12  *Inc. v. Castworld Products, Inc.*, the company demonstrably imported millions of infringing

13  cigarettes.  *See* 219 F.R.D. 494, 501 (C.D. Cal. 2003).  In *Sara Lee Corp. v. Bags of New York, Inc.*,

14  the court awarded $750,000 in statutory damages for trademark counterfeiting based on estimated

15  damages of $250,000 trebled to reflect willfulness.  36 F. Supp. 2d 161, 170 (S.D.N.Y. 1999).

16      Black & Decker also relies on the report and recommendation in *Nike, Inc. v. Top Brand, Co.*,

17  No. 00 Civ. 8179(KMW) (RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006) *report and*

18  *recommendation adopted* 2006 WL 2884437 (Oct. 6, 2006), but that case also is distinguishable.

19  There, the court recommended awarding the maximum statutory damages against several groups of

20  defendants who admitted counterfeiting various Nike and Adidas brand goods.  The court awarded

21  plaintiffs a total of $17 million in statutory damages against one group of defaulting defendants

22  accused of manufacturing, sourcing, distributing, and selling over 2 million counterfeit Nike t-shirts

23  and 500,000 counterfeit Adidas tee shirts and who (before defaulting) admitted many of the factual

24  allegations.  *Id.*; *see also Nike, Inc. v. Top Brand Co. Ltd.*, No. 00 CIV.8179 KMW RLE, 2005 WL

25  1654859 (S.D.N.Y. July 13, 2005) (providing factual background referenced in the report and

26  recommendation).  The damages awarded against the other defendants also were based on selling

27  millions of infringing products.  Here, Black & Decker presents no evidence suggesting that

28  Defendants infringed its marks on a similar scale.

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Thus, based on the submissions, the undersigned finds that $1,252,290 bears a plausible

2    relationship to Black & Decker's actual damages during the period from March 2011 to May 2013.

3    Awarding that amount is appropriate given Defendants' wilful violations of the law.  Accordingly,

4    the undersigned recommends that the district court award Black & Decker $1,252,290 in statutory

5    damages pursuant to 15 U.S.C. § 1117(c).

6    **B. Attorney's Fees**

7    The district court and the undersigned previously awarded the following attorney's fees and costs

8    as discovery sanctions.  The undersigned awarded Black & Decker $26,124.42, and the district court

9    imposed sanctions, fees, and costs relating to the violation of the TRO of $43,759, $87,921, and

10   $2,030.  *See id.*; ECF No. 85.  The issue now is whether Black & Decker should be awarded

11   additional fees.

12   Reasonable attorney's fees are allowed in "exceptional cases" of trademark infringement under

13   § 1117(a).  "While the term 'exceptional' is not defined in the statute, attorneys' fees are available in

14   infringement cases where the acts of infringement can be characterized as malicious, fraudulent,

15   deliberate, or willful."  *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002).

16   Here, Black & Decker elects only statutory damages under § 1117(c), which does not contain a

17   fee shifting provision.  A plaintiff that elects statutory damages under § 1117(c) cannot also receive

18   attorney's fees under § 1117(b).  *K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1083 (9th Cir. 2007).

19   The Ninth Circuit, however, has "not reach[ed] the issue whether an election to receive statutory

20   damages under § 1117(c) precludes an award of attorney's fees for exceptional cases under the final

21   sentence of § 1117(a)."  *Id.* at n.5.

22   Subsequent district court opinions in this circuit generally hold that electing statutory damages

23   bars attorney's fees under either § 1117(a) or (b).  *See, e.g., Symantec Corp. v. Logical Plus, Inc.*, C

24   06-7963 SI, 2010 WL 2330388 (N.D. Cal. June 4, 2010) (stating that the Lanham Act allows

25   recovery of attorney's fees only where plaintiffs pursue actual damages); *Tommy Bahama Grp., Inc.*

26   *v. Sexton*, C07-06360 EDL, 2009 WL 4673863 (N.D. Cal. Dec. 3, 2009) (same) *aff'd on other*

27   *grounds,* 476 F. App'x 122 (9th Cir. 2012); *Lifted Research Group, Inc. v. Salem*, No. C-08-4497

28   SC, 2009 WL 1371416, at *6 (denying request for attorney's fees under the Lanham Act because the

UNITED STATES DISTRICT COURT
For the Northern District of California

1   provisions that allow recovery of attorneys' fees only apply if plaintiffs choose to pursue actual

2   damages under 15 U.S.C. § 1117(a)-(b) and citing *K & N Eng'g*); *Philips*, 2008 WL 2699701, at *8

3   ("[b]ecause Plaintiff elected to pursue statutory damages, attorney fees cannot be granted pursuant to

4   15 U.S.C. 1117(a) or (b) and citing *K & N Engineering*) *aff'd on other grounds* 347 F. App'x 275;

5   *but see Herman Miller*, 2009 WL 3429739, at *10 (awarding attorney's fees in an exceptional case

6   without addressing *K & N Engineering*).

7       The Second Circuit addressed the issue recently, holding that attorney's fees are available under

8   § 1117(a) in exceptional cases even for those plaintiffs who opt to receive statutory damages under

9   section 1117(c).  *See Louis Vuitton Malleteir S.A. v. LY USA, Inc.*, 676 F.3d 83, 104-11 (2d Cir.

10  2012).  The court appears to have harmonized its statutory interpretation with the Ninth Circuit's

11  holding in *K & N Engineering*.  *See id.* at 106-10.  And one district court in this circuit has found the

12  Second Circuit's reasoning persuasive and allowed a party who elected statutory damages under §

13  1117(c) to recover attorney's fees under § 1117(a).  *See Ploom, Inc. v. Iploom, LLC*, No. 13-cv-

14  05813 SC, 2014 WL 1942218, at *8-9 (N.D. Cal. May 12, 2014) (Conti, J.).

15      Black & Decker argues that "[c]ourts in this district have awarded attorneys' fees in situations

16  where a plaintiff has opted for an award of statutory damages."  Motion for Default Judgment at 33.

17  Black & Decker cites only cases that pre-dated *K & D Engineering*, and they are distinguishable on

18  that basis.  *Id.* (citing *Mathys v. Maint. Repair Tech. Co., Inc.*, No. C 03-02888 SI, 2004 WL

19  2197710, at *1 (N.D. Cal. Sept. 16, 2004); *Doan*, 2007 WL 781976, at *7).  In accordance with the

20  weight of authority in this circuit, and in light of the fact that the parties did not fully brief the

21  impact of *Louis Vuitton* or *Ploom*, the undersigned recommends the district court deny Black &

22  Decker's request for additional attorney's fees beyond those already awarded.  The court's view also

23  is that this is not an exceptional case for several reasons, including the award to Black & Decker of

24  all of its fees as a discovery sanction, the undersigned's own laboring oar (through several rounds of

25  court-directed supplemental submissions, *see supra* Statement) to make the record for terminating

26  sanctions, and the course of litigation most recently starting in January.

27      **C.  Litigation Costs**

28      Black & Decker also seeks to recover its litigation costs under 15 U.S.C. § 1117(a).  *See* Motion

1   for Default Judgment at 34.  Courts in this district routinely award litigation costs under § 1117(a) to

2   prevailing parties, including those who opt for statutory damages under § 1117(c).  *See, e.g., Gucci*

3   *Am., Inc. v. Wang Huoqing*, No. C-09-05969 JCS, 2011 WL 31191, at *18 (N.D. Cal. Jan. 3, 2011)

4   *report and recommendation adopted sub nom. Gucci Am. v. Wang Huoqing*, No. C 09-05969 CRB,

5   2011 WL 30972 (N.D. Cal. Jan. 5, 2011).  Regardless, under Federal Rule of Civil Procedure 54(d)

6   "[u]nless a federal statute, these rules, or a court order provides otherwise, costs – other than

7   attorney's fees – should be allowed to the prevailing party."  Section 1117 does not require each

8   party to bear their own costs.  Accordingly, the court recommends permitting Black & Decker to

9   serve and file a bill of costs in accordance with Civil Local Rule 54-1(a).

10      **D.  Prejudgment and Post-Judgment Interest**

11      Black & Decker also seeks prejudgment and post-judgment interest as provided by 15 U.S.C.

12   § 1117(b).  Section 1117(b) applies when a plaintiff seeks actual damages.  "In such a case, the court

13   may award prejudgment interest . . . ."  15 U.S.C. § 1117(b).  Section 1117(c) does not provide for

14   prejudgment interest.  Because Black & Decker elected to receive statutory damages under

15   § 1117(c), it is not entitled to prejudgment interest.  *Cf. K & N Engineering*, 510 F.3d at 1083 (fee-

16   shifting provision in § 1117(b) inapplicable where plaintiff elects statutory damages under

17   § 1117(c)).

18      The situation is different with post-judgment interest.  Under 28 U.S.C. § 1961(a), "[i]nterest

19   shall be allowed on any money judgment in a civil case recovered in district court."  Accordingly,

20   the court recommends the district court deny Black & Decker's request for prejudgment interest and

21   grant their request for post-judgment interest as permitted by 28 U.S.C. § 1961.

22      **E.  Joint and Several Liability**

23      The next issue is whether the court should enter default judgment against Defendants jointly and

24   severally.  "A trademark, like a patent or a copyright, may be infringed by an individual as well as a

25   corporation and all participants, including those acting merely as officers of a corporation, may be

26   jointly and severally liable."  4 Thomas McCarthy, *McCarthy on Trademarks and Unfair*

27   *Competition*, § 25:24 (4th ed.).  "A corporate 'officer or director is, in general, personally liable for

28   all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as

UNITED STATES DISTRICT COURT
For the Northern District of California

1    an agent of the corporation and not on his own behalf.'" *Comm. for Idaho's High Desert, Inc. v.*

2    *Yost*, 92 F.3d 814, 823 (9th Cir. 1996) (reversing district court dismissal of individual defendants in

3    trademark infringement action against individuals and corporation).

4        Here, the Complaint alleges that D&L Elite Investments infringed Black & Decker's protected

5    marks, and that Billy Deng and Weishen Luo both directed and controlled the infringing activity.

6    Complaint ¶¶ 8-10.  Accordingly, the court recommends entry of a judgment against them jointly

7    and severally.

8        **F.  Injunctive Relief**

9        Black & Decker also requests a permanent injunction "to prevent any future trademark

10   counterfeiting or infringement by Defendants or any related entities."  Motion for Default Judgment

11   at 34-35.

12       The Lanham Act provides for injunctive relief to prevent future trademark infringement.  15

13   U.S.C. § 1116.  "Injunctive relief is the remedy of choice for trademark and unfair competition

14   cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing

15   infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).  In

16   order to obtain injunctive relief, a plaintiff must show either (1) probable success on the merits and

17   the possibility of irreparable harm, or (2) the existence of serious questions on the merits and the

18   balance of hardships tipping in its favor.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612

19   (9th Cir. 1989).  In an action for trademark infringement, "once the plaintiff establishes a likelihood

20   of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive

21   relief is not granted." *Id.*

22       Permanent injunctive relief is appropriate.  The evidence of Defendants' trademark

23   counterfeiting shows that Black & Decker is likely to succeed on the merits of the claim and that

24   customers were actually confused by Defendants' counterfeiting.  In addition, Defendants continued

25   to infringe Black & Decker's trademarks despite a temporary restraining order.  This suggests that

26   their infringing activities will not cease absent judicial intervention.  *See*, *e.g.*, *Jackson v. Sturkie*,

27   255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003).

28       Defendants argue that a permanent injunction is not warranted because they "are no longer

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

1    engaged in any online sales transactions."  Opp'n, ECF No. 160 at 2.  However, in *Friends of the*

2    *Earth, Inc., v. Laidlaw Env. Services (TOC), Inc.*, 528 U.S. 167 (2000), the Supreme Court

3    established a stringent standard for determining whether a case has been rendered moot by the

4    defendant's voluntary conduct:  "'A case might become moot if subsequent events made it absolutely

5    clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Id.* at 189

6    (quoting *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)).  Here,

7    Defendants' argument, which is entirely unsupported, does not meet that standard.

8         The inquiry is more complicated regarding the appropriate scope of injunctive relief.  As

9    discussed, under Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in

10   amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  The purposes of this rule is to

11   ensure that a defendant is put on notice of the damages being sought against it so that he may make a

12   calculated decision as to whether or not it is in his best interest to answer.  *In re Ferrell*, 539 F.3d

13   1186, 1192–93 (9th Cir. 2008); *Board of Trustees of the Sheet Metal Workers Local 104 Health*

14   *Care Plan v. Total Air Balance Co.*, No. 08-2038 SC, 2009 WL 1704677, at *3-5 (N.D. Cal. June

15   17, 2009).  Nonetheless, the Rule does not provide an exception for cases in which the defendant has

16   notice.  Thus, even where the defendant appears at a default judgment damages hearing, the court

17   cannot "escape the explicit and emphatic mandate of Rule 54(c) which unmistakably commands that

18   . . . the judgment 'shall not be different in kind from or exceed in amount that prayed for in the

19   demand for judgment' at the time of the entry of default."  *Fong v. U.S.*, 300 F.2d 400, 413 (9th Cir.

20   1962); *see* 10 Charles Alan Wright, Arthur R. Miller, *Federal Practice & Procedure*, § 2663 (3d ed.

21   2014) (quoting *Fong* for this proposition).

22        In its default judgment motion, Black & Decker asks for an injunction in the same form as the

23   parties' stipulated preliminary injunction, which prohibits selling or infringing any DeWalt products.

24   *See* Motion for Default Judgment at 35; Stipulated Preliminary Injunction Order, ECF No. 29.  The

25   terms of the stipulated preliminary injunction order are the following:

26        Defendants and their owners, officers, directors, employees, agents, servants, representatives,
          and all other persons, firms, or corporations acting in active concert or participation with

27        Defendants, shall be permanently enjoined and restrained from:

28             a.  manufacturing, advertising, distributing, offering to sell, or selling any product,
                   packaging or any other item of any kind that is or ever was named or labeled with the

UNITED STATES DISTRICT COURT
For the Northern District of California

word "DeWalt" or any colorable imitation thereof;

b.  manufacturing, advertising, distributing, offering to sell, or selling any product, packaging or any other item of any kind that is or ever was named or labeled with the DeWalt Trade Dress or any colorable imitation thereof;

c.  using the word "DeWalt" or any colorable imitation thereof on any website or in any other marketing, advertising or sales materials of any kind;

d.  transferring, transporting, shipping, sending, moving, disposing of, discarding, destroying, exporting, or otherwise parting with custody, control, or possession of any product, packaging or any other item of any kind that is or ever was named or labeled with the word "DeWalt" or any colorable imitation thereof;

e.  transferring, transporting, shipping, sending, moving, disposing of, discarding, destroying, exporting, or otherwise parting with custody, control, or possession of any product, packaging or any other item of any kind that does or ever did imitate the DeWalt Trade Dress or any colorable imitation thereof;

f.  modifying, re-labeling, re-packaging, re-naming, concealing, or otherwise changing the content, appearance, name, packaging or any other element, aspect, characteristic, or feature of any product, packaging or other item that is or ever was named or labeled with the word "DeWalt" or any colorable imitation thereof;

g.  modifying, re-labeling, re-packaging, re-naming, concealing, or otherwise changing the content, appearance, name, packaging or any other element, aspect, characteristic, or feature of any product, packaging or other item that does or ever did imitate the DeWalt Trade Dress or any colorable imitation thereof;

h.  Infringing or diluting any trademarks or trade dress listed below:
    (i)  DEWALT Trademark Registration No. 1,734,403;
    (ii)  DEWALT Trademark Registration No. 1,734,404;
    (iii)  DeWalt Trade Dress Registration No. 3,064,666; and
    (iv)  DeWalt Trade Dress Registration No. 3,066,999;

i.  effecting assignments or transfers, forming new entities or associations or utilizing any other device of the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs a-h above; or

j.  assisting, aiding or abetting any other person or business entity in engaging in any activity referred to in subparagraphs a-h above.

ECF No. 29.  In contrast, the Complaint asks for "a Permanent Injunction making permanent" the following preliminary injunction terms:

97. That the Court order that Defendants, their agents, servants, employees, representatives, successors, and assigns, and all persons, firms, or corporations in active concert or participation with any of Defendants, be immediately enjoined from:

a. directly or indirectly infringing Plaintiffs' trademarks and trade dress as described above in any manner including generally, but not limited to, copying, distributing, advertising, selling, and/or offering for sale any merchandise that infringes Plaintiffs' trademarks and/or trade dress including without limitation Defendants' Infringing

Goods,[7] and specifically distributing, advertising, selling, and/or offering for sale unauthorized copies of the DeWalt Trademarks and/or the DeWalt trade dress or any other unauthorized goods that picture, reproduce, or utilize the likenesses of or which copy or bear a substantial similarity to any of Plaintiffs' trademarks and trade dress; or

b.  engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, Defendants' customers, and/or members of the public to believe that, the actions of Defendants, the infringing products sold by Defendants, or Defendants themselves are connected with Plaintiffs, are sponsored, approved, or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

c.  affixing, applying, annexing, or using in connection with the manufacture, distribution, advertising, sale, and/or offering for sale or other use of any goods or services, a false description or representation, including words or other symbols, tending to falsely describe or represent such goods as being those of Plaintiffs;

d.  otherwise competing unfairly with Plaintiffs in any manner;

e.  diluting and infringing the DeWalt Trademarks and DeWalt Trade Dress and damaging Plaintiffs' goodwill, reputations, and businesses;

f.  during the pendency of this action, erasing, deleting, altering or destroying Defendants' Infringing Goods that are in Defendants' possession or control; and

g.  during the pendency of this action, destroying any documents, electronic files or business records that pertain to the copying, reproduction, manufacture, duplication, dissemination, or distribution of any of Defendants' Infringing Goods manufactured, distributed and/or sold by Defendants or under Defendants' authority, including any correspondence (including, but not limited to, electronic mails), sales and supplier or customer journals, ledgers, invoices, purchase orders, inventory control documents, bank records, catalogues, recordings of any type whatsoever, and all other business records and documents believed to concern the manufacture, purchase, advertising, sale, or offering for sale of such infringing copies;

h.  effecting assignments or transfers, forming new entities or associations or utilizing any other device of the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs a-g, above.

*Id.* ¶¶ 97, 103 (asking the court to issue a permanent with these terms).

The stipulated preliminary injunction differs in kind from the injunction requested in the Complaint.  First, subparagraphs (a), (b), and (d) of the stipulated preliminary injunction would bar Defendants from selling genuine DeWalt products, even on a secondary market.  *See* Stipulated Preliminary Injunction, ECF No. 29 at 2.  In contrast, the prohibitions in the Complaint bar only

---

7  The Complaint defines "Infringing Goods" as Defendants' "copycat yellow and black batteries bearing infringements of the DeWalt Trademarks and DeWalt Trade Dress."  Complaint, ECF No. 1, ¶ 26.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1    conduct that amounts to infringement or false representations concerning Plaintiffs' trademarks.

2    *Compare id.* at 2, *with* Complaint, ECF No. 1, ¶ 97(a)-(c).  Similarly, subparagraphs (f) and (g) of

3    the stipulated preliminary injunction would bar Defendants from modifying counterfeit products to

4    avoid further infringement, while the Complaint does not request such relief.  *Compare* ECF No. 29

5    at 3; *with* Complaint, ECF No. 1, ¶ 97.  Accordingly, the undersigned recommends the district court

6    enter a preliminary injunction similar to that requested in paragraph 97 of the Complaint.

7        There are problems with paragraph 97 as well.  First, subparagraphs f and g, which pertain to this

8    litigation, are inapplicable.  Second, subparagraph d is overbroad because it would enjoin

9    Defendants from "competing unfairly with Plaintiffs in any manner."  *See Truong Giang Corp. v.*

10   *Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *18-19 (N.D. Cal. May 29, 2007)

11   (finding that requested permanent injunction enjoining defendant from "unfairly competing with

12   [plaintiff]" was "vague and overbroad") (citing *Lamb-Weston, Inc. v. McCain Foods, Ltd.,* 941 F.2d

13   970, 974 (9th Cir. 1991) ("An overbroad injunction is an abuse of discretion."); Fed. R. Civ. P. 65(d)

14   (stating that injunctions should be set forth in specific terms)).

15       Accordingly, the undersigned recommends that the district court enjoin Defendants from further

16   infringement of the DeWalt trademarks and trade dress, as provided in the Complaint, ¶ 97,

17   subparagraphs (a)-(c), (e), and (h), as restated below.

18                                        **CONCLUSION**

19       The undersigned **RECOMMENDS** that the district court **GRANT** Plaintiffs' Motion to Strike

20   Defendants' Answer and direct the clerk to enter default against Defendants Billy Deng, Weishen

21   Luo, and D&L Elite Investments, LLC.  This disposes of ECF No.

22       The undersigned also **RECOMMENDS** that the district court **GRANT** the Motion for Default

23   Judgment as follows:

24       1.  $1,252,290 in statutory damages under 15 U.S.C. § 1117(c)(2) against Defendants jointly and

25           severally;

26       2.  post-judgment interest pursuant to 28 U.S.C. § 1961(a);

27       3.  litigation costs in an amount to be proved pursuant to N.D. Cal. Civil L.R. 54-1(a).

28       The undersigned also **RECOMMENDS** that the district court enter the following permanent

1 injunction against Defendants:

2    Defendants, their agents, servants, employees, representatives, successors, and assigns, and all

3 persons, firms, or corporations in active concert or participation with any of Defendants, be

4 immediately enjoined from:

5        a. directly or indirectly infringing Plaintiffs' trademarks and trade dress as described

6        above in any manner including generally, but not limited to, copying, distributing,

7        advertising, selling, and/or offering for sale any merchandise that infringes Plaintiffs'

8        trademarks and/or trade dress including without limitation Defendants' Infringing

9        Goods,[8] and specifically distributing, advertising, selling, and/or offering for sale

10       unauthorized copies of the DeWalt Trademarks and/or the DeWalt trade dress or any

11       other unauthorized goods that picture, reproduce, or utilize the likenesses of or which

12       copy or bear a substantial similarity to any of Plaintiffs' trademarks and trade dress;

13       or

14       b.  engaging in any conduct that tends falsely to represent that, or is likely to confuse,

15       mislead, or deceive purchasers, Defendants' customers, and/or members of the public

16       to believe that, the actions of Defendants, the infringing products sold by Defendants,

17       or Defendants themselves are connected with Plaintiffs, are sponsored, approved, or

18       licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs;

19       c.  affixing, applying, annexing, or using in connection with the manufacture,

20       distribution, advertising, sale, and/or offering for sale or other use of any goods or

21       services, a false description or representation, including words or other symbols,

22       tending to falsely describe or represent such goods as being those of Plaintiffs;

23       d.  diluting and infringing the DeWalt Trademarks and DeWalt Trade Dress and

24       damaging Plaintiffs' goodwill, reputations, and businesses;

25       e.  effecting assignments or transfers, forming new entities or associations or utilizing

26

27 ───────────────

28    8  The Complaint defines "Infringing Goods" as Defendants' "copycat yellow and black batteries bearing infringements of the DeWalt Trademarks and DeWalt Trade Dress."  Complaint, ECF No. 1, ¶ 26.

UNITED STATES DISTRICT COURT
For the Northern District of California

1     any other device of the purpose of circumventing or otherwise avoiding the

2     prohibitions set forth in subparagraphs a-d, above.

3     Also, sanctions previously have been awarded in this amount on these days:

4     1. $43,759 by the district court on July 19, 2013, as sanctions for violating the TRO.  *See*

5     $43,759.

6     2.  Reasonable fees and costs awarded by the district court in connection with that proceeding,

7     which were unopposed and established by lodestar and submissions as $87,921 in fees and $2,030 in

8     costs.  *See id.*; ECF No. 85.

9     3. $26,124.42 in costs and fees imposed by the undersigned as a sanction for discovery abuses.

10    *See* 2/24/10 Order, ECF No. 146 at 11.

11    Any party may file objections to this Report and Recommendation with the district judge within

12    fourteen days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.

13    Cal. Civ. L.R. 72.  Failure to file an objection may waive the right to review of the issue in the

14    district court.

15    Black & Decker also should submit a proposed form of judgment to the district court consistent

16    with this recommendation.

17    Dated: June 20, 2014

_____
LAUREL BEELER
United States Magistrate Judge